```
 1                 UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2

 3    *In Re: JPMORGAN CHASE
       MORTGAGE MODIFICATION LITIGATION   No. 11-md-02290-RGS
 4     Related cases:

 5      11-cv-11804-RGS

 6      11-cv-11812-RGS

 7      11-cv-11817-RGS

 8      11-cv-11818-RGS

 9      11-cv-11830-RGS

10      11-cv-11831-RGS

11      11-cv-11838-RGS

12      11-cv-11839-RGS

13      11-cv-11840-RGS

14      11-cv-11841-RGS

15      11-cv-10380-RGS

16

17         BEFORE THE HONORABLE RICHARD G. STEARNS
                UNITED STATES DISTRICT JUDGE
18                   STATUS CONFERENCE
                     October 21, 2011
19

20
                          Courtroom No. 21
21                        1 Courthouse Way
                          Boston, Massachusetts 02109
22

23
                   JAMES P. GIBBONS, RPR/RMR
24                  Official Court Reporter
                 1 Courthouse Way, Suite 7205
25              Boston, Massachusetts  02210
                     jmsgibbons@yahoo.com
```

1    APPEARANCES:

2           RODDY KLEIN & RYAN (By Kevin Costello, Esq., and
     Gary E. Klein, Esq.) 727 Atlantic Avenue, 2nd Floor,
3    Boston, Massachusetts 02111, on behalf of Plaintiffs

4           NATIONAL CONSUMER LAW CENTER (By Charles M.
     Delbaum, Esq.) 7 Winthrop Square, Boston, Massachusetts
5    02110, on behalf of Plaintiffs

6           LEVIN FISHBEIN SEDRAN & BERMAN (By Charles E.
     Schaffer, Esq.) 510 Walnut Street, Suite 500,
7    Philadelphia, Pennsylvania  19106-1500, on behalf of
     Plaintiffs
8
            HOLLAND GROVES SCHNELLER & STOLZE, LLC (By Eric D.
9    Holland, Esq.) 300 North Tucker Boulevard Suite 801, St.
     Louis, Missouri 63101, on behalf of Plaintiffs
10
            CUNEO GILBERT & LaDUCA, LLP, (By Jonathan W. Cuneo,
11   Esq.), 507 C Street, NE, Washington, D.C.   20002, on
     behalf of Plaintiffs
12
            KELLER ROHRBACK, (By Gretchen Freeman Cappio,
13   Esq.), 1201 Third Avenue, Suite 3200, Seattle,
     Washington 98101-3052, on behalf of Plaintiffs
14
            CONSUMER LITIGATION ASSOCIATES, P.C., (By Leonard
15   A. Bennett, Esq.), 12515 Warwick Boulevard, Suite 100,
     Newport News, Virginia   23606, on behalf of Plaintiffs
16
            THE GRANT LAW FIRM, (By Lynda J. Grant, Esq.), 521
17   Fifth Avenue, 17th Floor, New York, New York 10175, on
     behalf of Plaintiffs
18
            MAURIELLO LAW FIRM, (By Thomas D. Mauriello, Esq.),
19   1181 Puerta Del Sol, Suite 120, San Clemente, California
     92673, on behalf of Plaintiffs
20
            LANZA & SMITH, (By Anthony L. Lanza, Esq.), 3 Park
21   Plaza, Suite 1650, Irvine, CALIFORNIA 92614-8540, on
     behalf of Plaintiffs
22
             MORRISON & FOERSTER, LLP (By Michael J.
23   Agoglia) 425 Market Street, San Francisco, California
     94105, on behalf of Defendant

24

25

```
 1    APPEARANCES:   cont'd

 2            BULKLEY RICHARDSON & GELINAS, LLP (By Donn A.
       Randall, Esq.) 98 North Washington Street, Suite 500,
 3     Post Office Box 6329, Boston, Massachusetts 02114, on
       behalf of Defendant
 4

 5            Also Via Phone, Michael Flannery, Esq.,

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19                              Courtroom No. 21
                                1 Courthouse Way
20                              Boston, Massachusetts 02109

21

22

23            JAMES P. GIBBONS, RPR/RMR
                Official Court Reporter
             1 Courthouse Way, Suite 7205
24           Boston, Massachusetts  02210
                 jmsgibbons@yahoo.com
25
```

```
1                    P R O C E E D I N G S
2            THE CLERK:  All rise for the Honorable Court.
3        Court is open.  You may be seated.
4        The case before this Court is MDL 11-2290, In Re:
5    JPMorgan Chase Mortgage Modification Litigation.
6        Counsel, if you would identify yourselves for the
7    record.
8            MR. KLEIN:  Gary Klein, your Honor, Roddy,
9    Klein & Ryan, for the plaintiffs.  With me is Kevin Costello
10   with my firm and Charles Delbaum from the National Consumer
11   Law Center.
12           MR. SCHAFFER:  Good morning, your Honor.  Charles
13   Schaffer from the firm of Levin, Fishbein, Sedran & Berman,
14   and my cocounsel Eric Holland is here.
15           MR. CUNEO:  Good morning, your Honor.  Jonathan
16   Cuneo, Cuneo, Gilbert & LaDuca.
17           MS. CAPPIO:  Good morning, your Honor.  Gretchen
18   Cappio, Keller Rohrback.
19           MR. AGOGLIA:  Good morning, your Honor.  Michael
20   Agoglia from Morrison Foerster, along with Donn Randall from
21   Bulkley Richardson for the Chase entities.
22           THE COURT:  Good morning.
23       We have several counsel on telephone conference.
24           MR. FLANNERY:  Yes, your Honor.
25           THE COURT:  Could you each identify yourselves for
```

1      the record, please.

2              MR. FLANNERY:  Yes, your Honor.  Good morning.

3      This is Michael Flannery, with Carey, Danis & Lowe.

4              MR. BENNETT:  Good morning, Judge.  This is Leonard

5      Bennett on behalf of Michelle Bourdelais in the Virginia

6      case, Consumer Litigation Associates.

7              MS. GRANT:  Lynda Grant from The Grant Law Firm,

8      for Senter.

9              MR. MAURIELLO:  Good morning, your Honor.  This is

10     Thomas Mauriello from the Mauriello Law Firm in California

11     and I represent plaintiff Jean Wilcox.

12             MR. LANZA:  Good morning, your Honor.  Anthony

13     Lanza, with Lanza & Smith, Irvine, California, also

14     representing Jean Wilcox.

15             THE COURT:  So we have five counsel on the phone.

16         Can you all hear me?

17             MR. FLANNERY:  Yes, your Honor.

18             MR. BENNETT:  Yes, your Honor.

19             MS. GRANT:  Yes, your Honor.

20             MR. MAURIELLO:  Yes, your Honor.

21             MR. LANZA:  Yes, your Honor.

22             THE COURT:  I will give you an opportunity to speak

23     at each appropriate interval if you feel the need to, but I

24     would ask that when you speak, it would help the court

25     reporter if you identify yourself, just so that the name

1    appears correctly in the transcript.

2        I apologize for being uncharacteristically late, but it

3    was only because you gave me the new Proposed Scheduling

4    Order and Appointment of Counsel order, which I did want to

5    read and study before the hearing began.

6        Mr. Klein, are you going to begin with the major

7    speaking role?

8            MR. KLEIN:  Yes, you honor.

9        Your Honor, I haven't prepared an elaborate statement

10   of what this case is about.  You're familiar with the issues

11   from having sat on the Durmic case.

12       All of the cases in this MDL have to do with mortgage

13   modifications for individual homeowners around the country,

14   and many of the cases, your Honor, have been heavily

15   litigated in other courts.

16       What plaintiffs counsel -- and you may remember, your

17   Honor, that there is at least a little more urgency in this

18   case than in some of the others that you might hear because

19   of the issues involved in the home ownership and the risk of

20   foreclosures which may or may not be preventable in

21   connection with this litigation.

22           THE COURT:  Two questions.

23       This would be more for Chase.  Is Chase a party to the

24   negotiations with the attorneys general on mortgage --

25           MR. AGOGLIA:  Your Honor, given the news reports

1    about the state of those negotiations, I think what I can

2    say publicly is that Chase, along with every other major

3    servicer, has been a party to those ongoing negotiations.

4          THE COURT:  I am not looking for any

5    confidential --

6          MR. AGOGLIA:  I think that's a matter of public

7    record.  So I can confirm that.

8          THE COURT:  Again, I assume, because I know in the

9    Durmic case that discovery was progressing.  Obviously I

10   think there was a pause while we were waiting for the MDL

11   Panel to determine what it would do you, but I assume some

12   discovery has been done in that case and in other cases

13   which would be perfectly relevant to what we are doing now

14   as a consolidated case?

15         MR. KLEIN:  That's correct, your Honor.

16      We are just beginning to study the contours of the

17   various cases that have been transferred here, and there are

18   some issues in some of the cases that are different from

19   those in Durmic.

20      We're going to work as a group.  I think we have a good

21   cooperative group of plaintiffs' counsel in this matter, and

22   we're going to work as a group to try to organize the case

23   and try to figure out how to present it to the Court in a

24   way that streamlines it to the extent possible.

25      What we've done, your Honor, in advance of this

1    hearing, and it's a process that had begun even before the

2    MDL had filed, was to try to organize among plaintiffs'

3    counsel -- and that private ordering is consistent with the

4    Manual for Complex Litigation and other resources for this

5    kind of matter -- and what we've been able to do is put

6    ourselves in a position to propose a group of counsel who

7    would take leadership of this case and an executive

8    committee that would assist in the leadership in this case.

9    And counsel from all of the other cases have been agreeable

10   to the proposal that we put before you today.

11        This morning I spoke with Mr. Agoglia, and we pared

12   back the issues to be addressed in the order that we would

13   ask you to sign, but Mr. Agoglia wants to be heard on some

14   of the other issues about case management.

15        And what we thought was that if we could get the lead

16   counsel team appointed and the executive committee

17   appointed, it would put us in a position to begin quickly to

18   organize this case, to communicate with Mr. Agoglia about

19   various issues, to try to negotiate case management

20   procedures to present to the Court.

21        THE COURT:  I do not mean to take any drama out of

22   the proceeding, but I like the proposal with respect to

23   counsel, and I am going to adopt it.  I am familiar with

24   many of you, and the fact that you cooperatively agreed is

25   always a good sign.  So there is no reason for me not to

1    appoint counsel as requested.

2           MR. KLEIN:  Thank you, your Honor.

3        The plan for the near future would be, at least from

4    lead counsel's perspective, would be to try to organize a

5    consolidated and amended complaint that would pull together

6    the issues in the various cases and to create an orderly

7    process for trying to get a set of pleadings so that we can

8    continue the ongoing discovery.  And our position would be

9    that we'd like to continue the discovery as quickly as

10   possible so that we can move the case forward.

11          THE COURT:  All right.

12       Let's go down the list of items that you would like to

13   see in the scheduling order, a case order, an MDL order.

14       One we've resolved, which is the appointment of counsel

15   issue and coordinating committee issue.

16       The second is resolved.  We have a unified docket

17   number, which you already know because it is reflected in

18   the proposed order.  All filings will be made under that

19   docket number.

20       There are two rules that I have that I would like

21   followed.  One is please don't write letters to me.  It's

22   important that everybody see everything that is being filed

23   in the case.  So if you feel the urge to communicate, do it

24   by way of a motion or something that is put on the docket of

25   the case itself.

1          Also, it's very helpful to us if you are going to file

2     a document of more than 20 pages, which usually means

3     exhibits are attached to it, if we could have a courtesy

4     copy in paper.  I know it sounds more efficient to try to

5     print it all from the electronic document, but it is not.

6     It takes hours sometimes, particularly to get the exhibits

7     copied.  So to the extent that it's more than 20 pages, if

8     you would provide courtesy copies, that would be very

9     helpful.

10         In terms of filing rules, you're all familiar with

11     them.  There is no reason for me to go into that.  Everybody

12     knows that they need not file separate appearances in the

13     case.  If the cases are here under an MDL order, we know who

14     counsel are from the cases that have been consolidated.

15            MR. KLEIN:  Your Honor, may I make an inquiry about

16     that issue?

17            THE COURT:  Yes.

18            MR. KLEIN:  There is always a question about

19     whether the Court would want *pro hac vice* motions filed.

20         Is it fair to understand what you just said as not

21     requiring those motions to be filed?

22            THE COURT:  I do not think it's required.

23         I know the Court appreciates the fee, but because it's

24     an MDL matter, it seems to me that it's being consolidated.

25     It's a real case.  It's already here, and I think that we

1       should respect the fact that counsel have already made

2       appearances in the district where the case is filed.  If you

3       think about it from the point of law, those districts own

4       the cases.  All I can do is manage the case up to the point

5       that it's trial ready.  Under the Lexicon [ph.] decision,

6       the case goes back to the district court where it was filed

7       for ultimate trial, if there is a trial.  It's not common,

8       but it has happened.  So it would seem to me it is not

9       legally necessary.

10              MR. KLEIN:  Then the follow-up question to that,

11      your Honor, is whether it would be acceptable for any

12      counsel who wants notice to simply register for ECF?

13              THE COURT:  That was the next item on my list.

14              MR. KLEIN:  I apologize.

15              THE COURT:  No.  We're moving very nicely.

16              MR. KLEIN:  Thank you.

17              THE COURT:  We're working well together already.

18          So that's as far as I have gotten.

19          What the committee and defendant's counsel are going to

20      have to tell me is, given the amount of discovery that's

21      already been done, given the fact that everybody would like

22      to see this case resolve itself sooner rather than later,

23      what is a realistic scheduling order to take us to that

24      conclusion, or at least as far as I have the authority to

25      go?

```
 1            MR. KLEIN:  I think that, most appropriately, your
 2   Honor, would be a direction from you that we sit and talk
 3   about that so that we can present something to you that we
 4   agree on both sides.
 5            THE COURT:  You're so directed.
 6       (Laughter.)
 7            MR. KLEIN:  I have not had that discussion -- no
 8   one on our team has had that discussion yet with
 9   Mr. Agoglia.
10            THE COURT:  I think it is going to take you a few
11   days.  I assume you are already well along with the
12   coordination discussions.  You are going to have to sit
13   down, obviously, with Chase's counsel and get their input as
14   well.
15       But would it be realistic to ask within 14 days that a
16   proposed order be submitted?
17            MR. AGOGLIA:  Yes.  I think that deadline would
18   have many benefits, and if for some reason because of the
19   size of the team largely on the other side or other problems
20   we need an extra week, I would think I would come hat in
21   hand.
22            THE COURT:  I would obviously grant it, but I would
23   rather have things under some notice.
24       All right, 14 days for the proposed scheduling order.
25            MR. KLEIN:  Your Honor, I think the other types of
```

1    issues that need to be addressed are addressed in the

2    Proposed Case Management Order that we filed with the

3    original motion, not the motion I handed up this morning.

4         There are issues along the lines of document

5    preservation, getting a protective order in place that

6    applies across cases, because no we have separate protective

7    orders in the various cases, and those kinds of things.  And

8    I think our plan will be to try to move those things through

9    as expeditiously as possible.

10         THE COURT:  Do counsel on the telephone have

11    anything they wish to add?

12         MR. FLANNERY:  No, your Honor.

13         MR. BENNETT:  No.

14         MR. MAURIELLO:  No.

15         MR. LANZA:  No.

16         MS. GRANT:  No.

17         THE COURT:  The collective answer is "no" for the

18    record.

19      Mr. Agoglia, I know you want to be heard as well.

20         MR. AGOGLIA:  Your Honor, you have already made the

21    decision about the leadership structure of plaintiffs'

22    counsel.  We took no position on that.  I think that's

23    helpful in moving forward.

24      I do think the other appropriate next step is, as Gary

25    stated, that the parties get together and try to fashion a

PDF created with pdfFactory trial version www.pdffactory.com

1    joint proposal, or as joint as they can agree upon.  And

2    then if there are any issues that divide them, to sharpen

3    those and submit them to you in a very timely fashion to

4    decide what the structure of these cases will be going

5    forward.

6        On the order that Mr. Klein revised and submitted this

7    morning, I just want to point out one issue.

8        I don't know whether this was the intent, but in the

9    second paragraph, or Paragraph No. 2 --

10           THE COURT:  The "whereas" paragraph?

11           MR. AGOGLIA:  No.  Page 2.

12           THE COURT:  Oh, I see.  The numbered paragraph.

13           MR. AGOGLIA:  I just want to make it clear that it

14    is our understanding that the decision about what other

15    actions can be filed and transferred to this MDL rests

16    exclusively with the Judicial Panel on Multidistrict

17    Litigation.  They have the procedures.  They have the

18    jurisdiction.

19        And what I would not want this to be read as is an

20    invitation for others to file follow-on class actions in the

21    District of Massachusetts and then seek, through related

22    case or consolidation motions -- that would be

23    inappropriate.

24           THE COURT:  I agree with you.  I think the MDL

25    Panel would take exactly that position as well.  It always

1     has in past cases I have had.

2          MR. AGOGLIA:  Right.

3       And as long as Paragraph 2 is so understood, we have no

4     objection to it.

5          There will be some, perhaps, housekeeping matters, some

6     filtering of some case we think may be appropriate for

7     remand that have been dismissed with prejudice while the MDL

8     was pending.  Some may be remanded for other reasons by

9     agreement or by motion.

10         There will be tag alongs, we suspect.  I think both

11    plaintiffs' counsel and Chase suspect that there are other

12    tag alongs.  How quickly that happens is up to the Judicial

13    Panel on Multidistrict Litigation.  So there will be, I

14    think in short order, probably a good half-dozen or so

15    additional actions, all of which are in their embryonic

16    state.

17         And what you said about Durmic from your supervision of

18    it is correct.  The parties had phase discovery there

19    focused on class certification of plaintiffs, 30,000 pages

20    of documents produce, a 30(b)(6) witness deposition taken.

21    Half of the named plaintiffs were deposed.

22         If Durmic was left to its own devices, I think Gary and

23    I would be before you to discuss our positions on whether

24    discovery is finished or not and then proceeding with class

25    cert.

PDF created with pdfFactory trial version www.pdffactory.com

1          I think in only one other case was there any documents

2    produced beyond the named plaintiffs' file.  There was no

3    30(b)(6) witness deposition in any of the cases.

4          But these are the things we'll try to work out through

5    a common proposal on discovery, on procedural issues, the

6    phasing of discovery, on the time of class certification.

7          As you are aware in Durmic, the Court allowed the

8    parties time to engage in mediation supervised by

9    Retired-Judge Edward Infante.  A considerable amount of time

10   and effort was devoted to that.

11         Chase was then approached with whether at this point,

12   given the MDL, it would be appropriate to expand those

13   discussions.  And I think, in general form, there's a

14   willingness to do that.  There are logistical issues to be

15   worked out there, not the least of which is trying to get a

16   date as quickly before Judge Infante, but I think there is a

17   commitment on both sides to explore those possibilities and

18   get them moving in parallel as quickly as we can.

19         But I think those are the issues that immediately

20   present themselves in this MDL, your Honor.

21         THE COURT:  I will revise Paragraph 2 to make it

22   clear that any tag-along actions will make application to

23   the MDL Panel, as the rules require.

24         With respect to mediation, my position is that that is

25   a decision for the parties, which will now be Chase and the

1    steering committee.  I do not force mediation on anyone who

2    does not want it because it is, by definition, not going to

3    succeed.

4        The third thing I should say, which is a commitment

5    more to you, is that I do have a standing rule that it is

6    never inappropriate if I take more than ten days to resolve

7    a discovery dispute or more than 90 days to dissolve a

8    dispositive motion, to remind me I've broken my promise.  I

9    do not get offended if you file a motion.  In fact, I'm

10   thinking of a website:  Wheresmydecision.com --

11       (Laughter.)

12           THE COURT:  -- because I know how frustrating it is

13   to have judges not decide things, even as frustrating as it

14   is to have them decide things.

15           MR. AGOGLIA:  I do think there is a substantial

16   benefit from having progressed Durmic to where we did with

17   the initial case management and the like, and, I would say,

18   a fair amount of discovery.  And I think we're all quite

19   familiar with how timely your Honor's made decisions with

20   respect to this case and would make decisions if we had

21   disputes on discovery and the like going forward.  I think

22   everyone is mindful of that.

23           THE COURT:  Good.

24       So I will leave here, enter a case management order,

25   which will basically just deal with filing matters,

```
1    appointment of counsel, and then direct in 14 days a
2    proposed scheduling order with the modification that you
3    suggested with respect to tag-along actions.
4        Anything else I am supposed to do?
5            MR. AGOGLIA:  Not that I'm aware of, your Honor.
6            THE COURT:  Mr. Klein, anything else for today?
7            MR. KLEIN:  No, your Honor, although I did notice,
8    as I was sitting here just now, that if you're going to use
9    the form of order I handed up this morning, I apologize,
10   there's a point where the paragraphs start to renumber at
11   one, and I would --
12           THE COURT:  We'll catch that.  I may have to modify
13   it in some way in any event.
14       Okay.  Then we all know our jobs.
15           MR. KLEIN:  Do you want that order submitted in
16   another format so that you can modify it?
17           THE COURT:  Ms. Superfine, since you are going to
18   do the typing.
19           THE CLERK:  Electronically would be great.
20           MR. KLEIN:  I have a copy in Word.
21           THE COURT:  That would be good.
22       Does anyone use Word Perfect any longer?  I think the
23   Court system is the last.
24           MR. SCHAFFER:  Our office does, your Honor.
25   Unfortunately we're still using Word Perfect.
```

1          THE COURT:  I don't know why we do, but I think you

2     and the U.S. Courts.  Most are shifting over, but our IT

3     Department doesn't support Word, but it doesn't matter

4     because it doesn't need much support.  But either format

5     we're set up to handle.

6        Thank you, counsel.  This was a very productive 25

7     minutes.

8          MR. AGOGLIA:  Thank you, your Honor.

9          MR. KLEIN:  Thank you, your Honor.

10          THE CLERK:  All rise.

11        (Proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**C E R T I F I C A T E**

I, James P. Gibbons, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/James P. Gibbons          November 1, 2011

_____
James P. Gibbons

JAMES P. GIBBONS, CSR, RPR, RMR
Official Court Reporter
1 Courthouse Way, Suite 7205
Boston, Massachusetts 02210
jmsgibbons@yahoo.com