**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| In Re: JPMorgan Chase Mortgage Modification Litigation<br><br>This Document Relates To: All Actions | Case No. 11-md-02290-RGS |
|---|---|

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**
**(HEARING REQUESTED)**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

I.   INTRODUCTION ........................................................................................ 1

The Parties' Discovery Conferences.................................................................... 2

Relief Requested ................................................................................................. 3

II.  ARGUMENT ................................................................................................ 4

A.  RULE 30(B)(6) WITNESS ISSUES . .............................................................. 4

1.  Witness on Reports and Spreadsheets ............................................................ 5

2.  Witness on Data Production............................................................................ 6

3.   Witness of Audits Produced after the September 21 Order............................. 7

4.   Witness on Named Plaintiffs' Transactions .................................................. 8

5.   Witness on Complaince with the FDCPA ..................................................... 10

B.  DOCUMENT PRODUCTION ISSUES ....................................................... 12

1.   Production of Compliance Audits by MHA-C ............................................. 12

2.   Earlier Date Certain for Production of Email ............................................... 18

III. TIMING OF SUPP. EXPERT DISCLOSURE AND CLOSE OF DISCOVERY ...................... 20

IV.   CONCLUSION............................................................................................. 20

V.  REQUEST FOR HEARING......................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.,* 201 F.R.D. 33 (D. Mass. 2001)..........................6

*EPA v. Mink*, 410 U.S. 73 (1973). ...........................................................................................15

*HICA Educ. Loan Corp. v. Webster*, 2012 WL 1933751 (D. Me. Feb. 27, 2012). ..........................13

*In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995). ..........................................................passim

*In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577 (E.D.N.Y. 1979)...............................17, 18

*In re Subpoena Served upon the Comptroller of the Currency*, 967 F.2d 630 (D.C. Cir. 1992),... 15, 16, 17, 19

*In re Vitamins Antitrust Litigation*, 217 F.R.D. 229 (D.D.C. 2002);.............................................11

*MedImmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590 JF (HRL), 2009 WL 5069142 (N.D. Cal. Dec. 17, 2009). ..............................................................................................11

*Mitsui & Co. (U.S.A.) v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62 (D.P.R.1981)....................10

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1979)...................................................15

*Redland Soccer Club, Inc. v. U.S. Dept. of the Army*, 55 F.3d 827 (3d Cir. 1995) ..........................15

*Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217 (D.C. Cir. 1993)................................15

*Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93 (D. Md. 2003) ..........................11

*United States v. Taylor,* 166 F.R.D. 356 (M.D.N.C., 1996). ................................................6

*West v. Jewelry Innovations, Inc.*, No. C07-01812 JF (HRL), 2008 WL 512731 (N.D. Cal. Feb. 25, 2008)..11

## Statutes

5 U.S.C. § 552(*b*)(5) ...........................................................................................15

## Regulations

12 C.F.R. § 261.23(a)(1)..................................................................................16

12 C.F.R. § 4.37(b)(3)(i)..................................................................................16

12 C.F.R. §§ 4.36 – 4.37..................................................................................15

# I. INTRODUCTION

On September 21, 2012, this Court ordered Chase to produce additional documents relevant to the named Plaintiffs' transactions and to class certification. *See* Order on Plaintiffs' Motion to Compel "September 21 Order" (Doc. No. 149). The Court ordered, *inter alia*, production of named Plaintiffs' data; production of specified data samples concerning class-member loan modifications; production of various audits,[1] reports, and spreadsheets; production of email; production of complaint-related information; and production of documents relevant to government investigations. *Id.*

Although Chase began a limited rolling production of a handful of documents during October, the two data productions ordered by the Court were not handed over until the evening of November 1. Chase mailed the reports and spreadsheets on November 2, but Plaintiffs' counsel did not receive them until November 5. Chase has not yet produced email and most complaint-related information.  The current deadline for Plaintiffs' submission of a supplemental expert report is November 12.[2]

The data and materials that Chase recently produced are highly relevant to class certification. They provide specific examples of data records, audit outcomes, and internal reporting that illuminate Chase's common treatment of borrowers applying for loan modifications.  Among other things, the relevant data points and the methodologies that Chase itself uses to classify and evaluate its loan-modification processes are highly probative on key class certification questions, including ascertainability, commonality, typicality, and manageability. If, for example, Chase's own

---

[1] Unless otherwise specified, Plaintiffs use the term "audit" here and throughout this brief to describe both internal and external audits. Internal audits include Chase's own evaluations performed for the purposes of quality assurance or quality control.

[2] In light of the prior deadlines of October 29, 2012 and November 2, 2012 for named plaintiffs'
[2] In light of the prior deadlines of October 29, 2012 and November 2, 2012 for named plaintiffs' discovery and expert reports, respectively, Plaintiffs had to seek consent for and move on the requested extensions *before* they saw the production on most issues from Chase.

data or internal reporting shows that Chase had a pattern or practice of delaying permanent modification decisions beyond the contractual time frame, that data or report bears on the class certification question of whether Chase's records can be used to identify class members, in addition to the merits question of whether Chase breached its contractual obligations.

Plaintiffs and their experts are working diligently to review the substantial volume of data and materials that Chase recently produced, but, as discussed in detail *infra*, much of the recent production is not self-explanatory.  Chase's production at the very end of the discovery period has deprived Plaintiffs of an opportunity to ask qualified witnesses to explain the documents so that Plaintiffs and their experts can understand the meaning of the data, the methodologies behind reports, and how Chase itself used the voluminous loan-modification-related data and reports it generated during the relevant time period.

**The Parties' Discovery Conferences**

In light of the short time period between the Court's September 21, 2012 Order and the November 2, 2012 deadline closing class certification and named Plaintiffs' discovery, on September 24, 2012, Plaintiffs sought a meet and confer to resolve questions about the timing and format of discovery, as well as to discuss corporate representative witnesses under Federal Rule of Civil Procedure 30(b)(6) (hereafter "30(b)(6) witness") who Plaintiffs anticipated would be required to resolve questions about the complex documents still to be produced. Thereafter, the parties held telephonic meet and confer discussions on several occasions, including the following dates: October 1, October 19, October 22, and October 29.  To further the meet and confer, Plaintiffs sent relevant correspondence to Chase on the following dates: September 24, September 26, September 27, October 3, October 8, October 9, October 12, October 16, October 17, October 23, and October 31.  Chase responded on dates including: September 25, September 26, September 28, October 3, October 8, October 10, October 11, October 15, October 17, October 25, and October 29,

November 2 and November 8. Additional correspondence relevant to the meet and confer was

transmitted by email.[3]

      The meet and confer has been somewhat productive and has resolved certain issues.

However, despite the best efforts of both parties, some issues have not been resolved and require

attention from the Court.

**Relief Requested**

      By this motion, Plaintiffs seek the following relief:

- A Rule 30(b)(6) witness or witnesses concerning reports and spreadsheets that contain loan-level account data;

- A Rule 30(b)(6) witness or witnesses to explain the content of the data samples produced under the Court's September 21 Order;.

  A Rule 30(b)(6) witness or witnesses concerning audit documents produced under the the Court's September 21 Order;

- A Rule 30(b)(6) witness or witnesses concerning the named Plaintiffs' transactions;

- A Rule 30(b)(6) witness or witnesses concerning policies and procedures relevant to Chase's compliance with the Fair Debt Collection Practices Act ("FDCPA");

- The production of MHA-C audits, and the Court's overriding Chase's incorrect assertions of the bank examination privilege.

- A date certain for production of email.

- An extension of the expert supplementation deadline to allow completion of Chase's document production as required by the September 21 Order and conduct any depositions ordered by the Court as relief on this motion.

      Plaintiffs are eager to move for class certification, but the information asymmetry continues

to be daunting. Chase has recently produced a significant amount of data and many documents

whose meaning and uses are known to Chase, but are not reasonably transparent to Plaintiffs and

---

[3] The correspondence and email is available on request to establish, if necessary, the thoroughness of the parties' meet and confer on the issues that are the subject of this motion.

their experts without explanatory testimony from a corporate representative. In addition, the

remaining document production issues impact Plaintiffs' ability to have a fair opportunity to pursue

class certification.

## II. ARGUMENT

### A.     RULE 30(B)(6) WITNESS ISSUES

In compliance with the September 21 Order, Chase has now produced data and documents

that should have been available to the Plaintiffs earlier in the discovery period so that Plaintiffs

could make inquiries of Rule 30(b)(6) witnesses necessary to understand them fully. While Chase

will complain that Plaintiffs have already had witnesses who knew something about the data and

reports, Plaintiffs obviously could not have asked witnesses about data and documents not then

produced.  Plaintiffs are entitled to corporate testimony on the data and documents that it produced

at the close of the discovery period.  Chase should not be allowed to benefit from its delay in

producing the clearly relevant information by failing to provide testimony necessary to understand

them.[4]

Rule 30(b)(6) mandates that an "organization ... shall designate one or more officers,

directors, or managing agents or other persons who consent to testify on its behalf" to "testify as to

matters known or reasonably available to the organization."  As Magistrate Judge Collings has held:

> Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all
> matters known or reasonably available to it and, therefore, implicitly requires persons to
> review all matters known or reasonably available to it in preparation for the 30(b)(6)
> deposition. This interpretation is necessary in order to make the deposition a meaningful one
> and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry
> before the deposition but a thorough and vigorous one before the trial. This would totally
> defeat the purpose of the discovery process.... [P]reparing for a Rule 30(b)(6) deposition can
> be burdensome. However, this is merely the result of the concomitant obligation from the
> privilege of being able to use the corporate form in order to conduct business....[A company]
> does not fulfill its obligations at the Rule 30(b)(6) deposition by stating that it has no

---

[4] The topics for which witnesses are needed also includes several key 30(b)(6) topics on which
Chase, despite compromise proposals explained below, has simply refused to produce a witness..

knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available....

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.,* 201 F.R.D. 33, 36-37 (D. Mass. 2001), citing *United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C., 1996). Plaintiffs are entitled to corporate representative testimony on the following topics:  (1) Reports and Spreadsheets recently Produced; (2) Data recently produced; (3) Audits produced after the Court's September 21 Order; (4) Named Plaintiff transactions; (5) FDCPA.

### 1.  Witness on Reports and Spreadsheets[5]

In response to Plaintiffs' Motion to Compel production of indisputably relevant reports containing loan-level account data, Chase assured the Court that production was in process and would be made on a rolling basis. *See* Motion to Compel Opp. [Document No. 137] at 18-19. The Court took Chase at its word and ordered continued production. Yet Plaintiffs received nothing on these issues until November 5, 2012. In addition, the reports that Chase produced appear to be limited to the latter part of the class period.

Two examples of the reports at issue are attached to the Klein Declaration as Exhibits 2 and 3.  These spreadsheets, reports, and audits appear to constitute Chase's compilations of its own data. They likely show individual and aggregate experiences in various modification programs as well as problems with the timeliness of Chase's own decision-making processes. Because these reports include information regarding named plaintiffs and putative class members' loan modification processes, they are directly relevant to class certification.

But the reports produced are complicated and, in many ways, opaque to anyone external to Chase. The purpose and use of many of these report is unclear. Each report appears to have been

---

[5] The Plaintiffs' Rule 30(b)(6) deposition notice contains Area of Inquiry No. 18, which requests a witness on: "Any and all reports, studies, internal or external audits and/or other types of evaluations You conduct Related to Your compliance with HAMP and/or other Modification Programs."  A copy of the Plaintiffs' Rule 30(b)(6) deposition notice is attached to the Declaration of Gary Klein ("Klein Decl.") (filed under seal) as Ex. 1.

written for an audience of specialized Chase employees who understand Chase terminology, data-gathering processes, and the multiple uses of each report. Plaintiffs and their experts naturally have questions about the source of the data; what the various data fields in the report are used for; what the data field codes mean; what the absence of certain data in certain fields means; and the reason why certain data fields were chosen (rather than others) as a basis for Chase to reach conclusions about its loan-modification processes. Moreover, Plaintiffs are left to speculate about why the production does not appear to include similar reports for 2009 and 2010, the time period during which Chase was penalized by the United States Treasury Department for its problematic implementation of HAMP (and the period during which the majority of Plaintiffs' claims arose). Without a witness who can explain the reports and their uses, Plaintiffs and their experts are at a distinct disadvantage of information.

Chase will undoubtedly argue, as it has during the meet and confer, that Plaintiffs could have asked questions about these reports and spreadsheets of witnesses who have already been produced. That, however, would have been impossible. Plaintiffs did not even have the names of the reports until they were produced, let alone a grasp of the details.

Chase's refusal to produce a witness on reports and spreadsheets appears to be the final goal of the discovery cat-and-mouse game it has played in this case to this point. By waiting to produce these clearly relevant reports until November 5, 2012, it apparently intends to block Plaintiffs from having a sufficient grasp of them to properly inform their expert opinions and to present fairly their case for class certification.

## 2. Witness on Data Production[6]

---

[6] This topic is covered by Area of Inquiry No. 20 in Plaintiffs' Rule 30(b)(6) deposition notice: "Plaintiffs' Modifications, Accounts and Account Records" and by Area of Inquiry 22: "All electronic system(s) You use that Relate to HAMP and/or other Modification Programs, including, without limitation, electronic storage of data, Communications and Documents Related to Modifications and Modification applications."

Chase served the Plaintiffs data and the sample of class-member data after the close of business on November 1, 2012.[7] A sample of each data production is attached to the Klein Declaration as Exhibits 4 and 5, respectively.  The data, which is part of the foundation of Plaintiffs' class certification case on commonality and typicality, presents the same problems of analysis described above for reports and spreadsheets. While some fields and their meaning are clear, a substantial number of fields and their uses are not. Chase understands its own data and should be required to provide a witness who will allow Plaintiffs and their experts to fully understand it as well.

Chase's proposed solution to this problem was to present some limited explanations of the field names. (Attached as Exhibit 6 to the Klein decl.)  The descriptions beg as many questions as they answer and, in many instances are open to interpretation.  Specific examples of such obstacles are described in detail in the Klein declaration.  *See* Klein Decl. at ¶¶ 8-9. Without a witness who can answer questions about the data sample, the information asymmetry overwhelms the utility of the production.  The witness could also aid Plaintiffs in developing their understanding of Chase's data by testifying about the reasons why other data fields that Chase appears to maintain (as evidenced by its reports and other discovery materials) have been omitted from the sample.

### 3.  Witness on Audits Produced after the September 21 Order

Both Area of Inquiry 17 and 26 of Plaintiffs' Rule 30(b)(6) deposition notice covered audits. *See* Klein Decl. at Ex. 1.  In October, Chase produced a variety of external audits that non-governmental entities conducted for unspecified purposes. These audits are heavily redacted and

_____

[7] In response to Plaintiffs' request for a witness to explain its data production, Chase's counsel offered – on November 8 -- to answer written questions about the reports through counsel.  Such a proposal  is woefully inefficient, inadequate and represents far less than is contemplated by the discovery rules. It is no substitute for allowing Plaintiffs to ask a knowledgeable witness to explain the reports, so that they can ask follow up questions. Further, as discussed below, there is presently insufficient time remaining in the discovery process to allow such a litigated exchange of information to occur.

Chase has, after substantial back and forth, now agreed to a redaction log – to be produced by November 9.[8]  These audits are highly relevant to Plaintiffs' claims and to common issues, including whether Chase had systemic problems that kept it from meeting the terms of its agreements to modify loans.

It is unclear why Chase believes that Plaintiffs are not entitled to a witness who can testify about the substance of the audits; the purpose for which they were conducted; what changes Chase made in response; and the nature of the redacted material. Plaintiffs should be given an opportunity to contest claims that certain audit findings are not relevant, and should be allowed to learn what information Chase provided to the auditors that led to their conclusions.  Again, Chase appears to seek, by late production, to subvert appropriate inquiries that should have been possible months ago as witnesses were being produced.

### 4.  Witness on Named Plaintiff Transactions

Plaintiffs' efforts to obtain a witness to offer testimony regarding the named Plaintiffs' modification processes have proven futile. This topic was listed in Plaintiffs' 30(b)(6) notice. As Topic 20.  *See* Klein Decl. at Ex. 1.  Chase objected and refused to produce a witness on this topic, claiming that the request was vague, ambiguous, overbroad, and unduly burdensome, because "[i]t is impracticable for any witness to memorize every detail about every aspect of each of the Plaintiffs' modifications, accounts, and account records." *See* Klein Decl. at Ex. 6 at 13.

During a series of discovery conferences and correspondence, Plaintiffs' pointed out that Chase had failed to designate a witness on this topic and explained the topic's relevance not just to the merits, but also to typicality and commonality. Later, Plaintiffs' counsel proposed a compromise: excluding policy and practice questions from the scope of inquiry and concentrating on the specific decision-making process for the named Plaintiffs. Despite this proposal, Chase still

---

[8] Chase asserts that these audits were redacted for relevance, but does not specify the principles it used to determine relevance.

did not designate a witness on Topic 20. Plaintiffs reiterated the proposal by letter dated September

7, 2012. Chase's response was to stand on its previous objections regarding the over-breadth of the

topic. The parties again discussed this topic during a series of September and October letters,

emails, and telephonic conferences, with Plaintiffs disputing the basis for Chase's objections and

offering a further compromise proposal to limit the number of named Plaintiffs to a sub-group of

eight that would serve as exemplars. Chase rejected this proposal. By letter dated October 23, 2012,

Plaintiffs confirmed that the parties were at an impasse on the provision of a witness to testify on

Topic 20.

  The Topic 20 witness Plaintiffs seek to compel falls well within Rule 26's scope of

permissible relevant discovery, and Chase does not argue otherwise. Instead, the nature of Chase's

objection to providing a witness on Topic 20 concerns the breadth of the topic and the burden it

would allegedly create. Yet rather than providing empirical evidence of the burden associated with

the breadth of the topic, Chase resorts to hyperbole. By arguing that "[i]t is impracticable for any

witness to memorize every detail about every aspect of each of the Plaintiffs' modifications,

accounts, and account records," and by refusing Plaintiffs' offers to conduct an examination on a

sub-group of named Plaintiffs, Chase illustrates its lack of good faith in moving the discovery

process forward. Plaintiffs, of course, do not expect a single witness to "memorize every detail of

every aspect of each of Plaintiffs' modifications." Plaintiffs merely expect the good faith effort

required by the Federal Rules.

  "[R]ule 30(b)(6) places the burden upon the deponent to 'make a conscientious good-faith

endeavor to...prepare [it's designee(s)] in order that they can answer fully, completely,

unevasively.'" *Briddell v. Saint Gobain Abrasives Inc*., 233 F.R.D. 57, 60 (D. Mass. 2005) (quoting

*Mitsui & Co. (U.S.A.) v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62, 67 (D.P.R.1981)).

"This duty of preparation 'goes beyond matters personally known to that designee or to matters in

which that designee was personally involved.'" *Id.* (quoting *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)). "If necessary, the deponent must use documents, past employees, and other resources in performing this required preparation." *Id.* (internal citations omitted).

Instead of describing the nature of the burden that such a process might require, Chase offers only boilerplate objections and exaggeration. Yet, Chase bears the burden to prove the basis for its objections. "On motion to compel discovery…. the party from whom discovery is sought musts show that the information is not reasonably accessible because of undue burden or cost." W.E. Aubuchon Co., Inc., 245 F.R.D. at 41. Chase has failed completely in meeting this burden. *Cf. Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 99 (D. Md. 2003) ("A properly particularized showing of burden… identifies evidentiary facts to support the claims of unfair burden or expense."). Specifically, courts across a variety of jurisdictions have rejected objections similar to the boilerplate "memorization" claims made by Chase here. *See, e.g.*, *In re Vitamins Antitrust Litigation*, 217 F.R.D. 229, 234 (D.D.C. 2002); *West v. Jewelry Innovations, Inc.*, No. C07-01812 JF (HRL), 2008 WL 512731 at *2 (N.D. Cal. Feb. 25, 2008).

Chase's opposition will undoubtedly be accompanied by employee declarations cataloguing the various and sundry aspects of named Plaintiffs' files in support of its contention that no witness could possibly memorize each one. But the complexity of the relevant files, if anything, supports the need for a witness so that the Plaintiffs can understand the files from Chase's perspective.  On balance, this Court should conclude that Chase's burdensomeness objection is not sufficient. Even where the preparation for a Rule 30(b)(6) deposition is "onerous," courts have ordered discovery to go forward.  *See MedImmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590 JF (HRL), 2009 WL 5069142 at *2 (N.D. Cal. Dec. 17, 2009).

**5.  Witness on compliance with the FDCPA**

10

Plaintiffs also seek a Rule 30(b)(6) witness pursuant to Plaintiffs' Area of Inquiry 28 as described in their Amended Supplemental 30(b)(6) deposition Notice.  *See* Klein Decl. at Ex. 7.  This area of inquiry is pertinent to Plaintiffs' FDCPA and Rosenthal Act claims—both of which survived Chase's motions to dismiss, *see* July 27, 2012 Order (Doc. No. 97) at 37-42 – and on which Plaintiffs are entitled to discovery.

The parties' negotiation history with respect to this 30(b)(6) topic illustrates that Chase has continually shifted its justifications for not providing Plaintiffs *either* document or deposition discovery on debt collection issues:

- On a June 5, 2012 meet and confer telephone call, Chase's counsel Rita Lin originally raised the proposal that Chase could produce a 30(b)(6) witness on debt collection issues in lieu of producing what she described as a "giant mountain" of documents that would be responsive to RFPs 18 and 19, as well as RFP 22.

- On September 7, 2012, Plaintiffs' counsel reminded Chase's counsel Gregory Dresser of Ms. Lin's suggestion and asked to discuss Ms. Lin's proposal in more detail, without waiving their request for debt collection documents.

- On September 12, 2012, Chase's counsel invited another meet and confer on outstanding 30(b)(6) issues, and on September 13, 2012 Plaintiffs' counsel confirmed that they wanted to discuss multiple issues in this regard.

- On September 24, 2012, Chase's counsel promised to look into the name and scope for a designee on area of inquiry 28.  Plaintiffs requested a response by September 26.

- On September 25, Chase's counsel wrote that he was "checking into whether it is possible to have a 30(b)(6) witness on the FDCPA issues."

- On October 1, despite previously conveying that Chase was working substantively on the issue, Chase's counsel sent a letter *refusing* to designate a 30(b)(6) witness on debt collection issues, based on a new and previously uncommunicated position that "[t]his topic does not appear in plaintiffs' 30(b)(6) deposition notice."

- On October 2, 2012, Plaintiffs cured this purported defect by serving an Amended Supplemental 30(b)(6) Notice—containing just the one additional topic Ms. Lin suggested as described above and again requested a meet and confer on this and other deposition issues.

- By letter on October 9, Plaintiffs' counsel again asked Chase's counsel for a witness name for area of inquiry 28.

11

- On October 11, 2012, Chase's counsel served Objections to Plaintiffs' Amended Supplemental 30(b)(6) Notice.

As the foregoing illustrates, Chase has orchestrated a bait and switch under which they proposed substituting the deposition for document production and then refused to provide a witness on the relevant topic.[9]  Plaintiffs are entitled to either a full production of documents responsive to RFPs 18, 19, and 22 or a 30(b)(6) witness on this topic, as Chase originally suggested.

## B.    DOCUMENT PRODUCTION ISSUES

Plaintiffs also seek an order compelling production of certain additional categories of documents as follows:

### 1.  Production of Compliance Audits by MHA-C

In seeking discovery from Chase, Plaintiffs have requested the production of documents relating to audits of Chase's mortgage-modification policies and procedures, whether those audits were initiated by Chase or by governmental agencies. In particular, Plaintiffs asked Chase to produce any materials relating to audits by the Making Home Affordable Compliance division ("MHA-C").[10]  Chase has declined to produce the MHA-C audits, as well as other compliance audit

---

[9] Chase's sole legal authority for its position appears in its General Objection No. 18 (dated October 11): that Plaintiffs have "noticed two 30(b)(6) depositions of Chase without obtaining" leave of Court to depose the "same entity" twice under Rule 30(a)(2)(A)(ii).  Chase's objection should be overruled.  Plaintiffs *amended* their single notice before the 30(b)(6) deposition had been completed and before the conclusion of discovery.  This is a practice that is widely accepted and commonly employed in civil litigation—references to such amendments abound.  *E.g.*, *HICA Educ. Loan Corp. v. Webster*, 2012 WL 1933751, at *1 (D. Me. Feb. 27, 2012).  This (single) 30(b)(6) deposition is ongoing and incomplete.

[10] MHA-C is the primary auditor of HAMP compliance for all mortgage servicers. MHA-C is a unit of the Federal Home Loan MortgageCorporation (FHLMC) ("Freddie Mac"). Freddie Mac is not a regulatory body; rather, it is a public government sponsored enterprise (GSE)—a company— "chartered by Congress in 1970 to keep money flowing to mortgage lenders in support ofhomeownership and rental housing. Its statutory mission is to provide liquidity, stability and affordability to the U.S. housing market." Freddie Mac: Company Profile, http://www.freddiemac.com/corporate/company_profile (last visited Nov. 9, 2012). Freddie Mac

materials relating to HAMP, claiming that these materials are protected by the bank examination privilege.[11]  Plaintiffs now respectfully ask the Court to assess and ultimately overrule these assertions of the bank examination privilege, and order the immediate production – without inappropriate redaction – of the requested audit materials, including materials relating to MHA-C audits. As discussed in more detail below, Plaintiffs believe that the material Chase has withheld is predominantly factual in nature[12] and therefore not entitled to protection under the bank examination privilege. Additionally, Plaintiffs submit that important public policy considerations outweigh any concern for protection of the official deliberative process at issue here. If necessary, the Court should conduct an *in camera* inspection of the subject documents to determine whether – as Plaintiffs suspect – almost all of the information contained in those documents is factual in nature, and therefore not entitled to protection under the bank examination privilege, and whether public policy considerations provide good cause for overriding the privilege here.

"[T]he bank examination privilege is a qualified rather than absolute privilege which accords agency opinions and recommendations and banks' responses thereto protection from disclosure." *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995). The bank examination

---

was tasked by the Department of the Treasury with assuring each participating servicer's compliance with the HAMP Program. *Id.* MHA-C's audits are conducted pursuant to the servicer participation agreement Chase signed as part of its participation in HAMP, and thus are conducted as a matter of contract.

[11] On October 8, 2012, Chase provided Plaintiffs with a privilege log.  See Klein Decl. at Ex. 8. .  The document listed 59 separate documents, all of which related to various audits of Chase's mortgage modification policies and procedures, and all of which are plainly at the very heart of this litigation.  Chase asserted the bank examination privilege for 49 of those 59 documents.

[12] Chase has tried to "claw back" certain documents in this matter, claiming inadvertent production of privileged material, after initially producing the documents in unredacted form.  Chase's most recent attempt to do this, relating to an exhibit that was used at the deposition of Catherine Fetner, demonstrated that Chase's view of privileged audit material is overbroad and unsupportable.  A side-by-side comparison of the unredacted and redacted version of the Fetner exhibit shows that the material Chase seeks to shield from production is precisely the sort of "purely factual material" that the bank examination privilege does not protect.  Plaintiffs plan to challenge Chase's "claw back" of the Fetner exhibit in a future motion.

privilege is a "close cousin" of the "deliberative process privilege" (also called the "official

information privilege" or "intragovernmental opinions privilege"), *see In re Subpoena Served upon

the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992), which protects from

discovery certain communications within and between governmental agencies concerning their

policies, *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1979).[13] *See also Lahr v. National

Transp. Safety Bd.*, 569 F.3d 964, 979-980 (9th Cir. 2009); *Carter v. U.S. Dept. of Commerce*, 307

F.3d 1084, 1088-1089 (9th Cir. 2002).[14]

As Chase well knows, the bank examination privilege does not belong to it, but rather

belongs to the governmental agency that conducted the audit, such as MHA-C. *See In re Bankers

Trust Co.*, 61 F.3d at 472; *Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir.

1993) ("the *agency* asserting the privilege has the burden of establishing [it]") (emphasis added).

*See also Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dept. of

Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996). MHA-C, acting as an agent for the Office of the

Comptroller of the Currency ("OCC"), could assert the privilege, but that is a matter in its

discretion. Thus, Chase is not, properly speaking, asserting the bank examination privilege at all,

but rather acting in accord with federal regulations that prevent it from disclosing non-public OCC

information. *See* 12 C.F.R. §§ 4.36 – 4.37. Plaintiffs are, thus, not required to exhaust

administrative remedies before seeking this information from Chase under Federal Rule of Civil

---

[13] The privilege also has been incorporated into the Freedom of Information Act, 5 U.S.C. § 552(*b*)(5), to protect certain agency documents from disclosure. *See EPA v. Mink*, 410 U.S. 73, 79 (1973). "Exemption 5" of the FOIA, 5 U.S.C. § 552(b)(5), specifies that agencies are not required to disclose records protected by privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1979) (Exemption 5 covers "those documents normally privileged in the civil discovery context").

[14] As the *Comptroller* Court put it: "the courts have long recognized that the report of a bank examiner is protected by a qualified privilege . . . That privilege has been referred to variously as an aspect of the privilege for 'official information,' or 'intragovernmental opinions,' or even of the 'deliberative process privilege.'" *See also Redland Soccer Club, Inc. v. U.S. Dept. of the Army*, 55 F.3d 827, 853 n.18 (3d Cir. 1995) ("The two privileges [bank examination and deliberative process] are similar and precedent concerning them is often relied upon interchangeably").

Procedure 34(a). *See In re Bankers Trust Co.*, 61 F.3d at 470-71 ("It seems illogical to this court to require [plaintiffs] to initiate the much more cumbersome procedure of serving a subpoena on the Federal Reserve in Washington, D.C. simply to enable [them] to obtain the same documents that defendant Bankers Trust possesses").

Regardless, the bank examination privilege does not apply to any factual information contained in these audits, and this Court should therefore order Chase to produce that information.[15] *See In re Bankers Trust Co.*, 61 F.3d at 471; *Schreiber*, 11 F.3d at 221; *In re Subpoena*, 967 F.3d at 634. The bank examination privilege "protects only agency opinions and recommendations," *Schreiber*, 11 F.3d at 221; *accord In re Subpoena*, 967 F.2d at 634, as well as a bank's responses thereto. *See In re Bankers Trust Co.*, 61 F.3d at 471. It does not extend to "purely factual material," *In re Subpoena*, 967 F.3d at 267, including factual material that resides in an otherwise privileged document, provided that the privileged material is severable and can be redacted, *Schreiber*, 11 F.3d at 220. Here, Plaintiffs believe that Chase has claimed that the bank examination privilege applies to audit materials containing such purely factual information. laintiffs believe this because Chase has asserted the privilege in seeking to "claw back" purely factual information contained in certain audit materials it has already produced.

Moreover, the privilege is qualified rather than absolute. Hence, it may be "overridden for good cause" upon a "balancing of competing interests." *In re Subpoena*, 967 F.2d at 634 (internal citations and quotation marks omitted); *accord Bankers Trust*, 61 F.3d at 471. Among the interests commonly considered are "(i) the relevance of the evidence…; (ii) the availability of other

---

[15] Plaintiffs are not aware, at this juncture, whether Chase complied with its duty to notify federal regulators of the document requests at issue here. Specifically, Chase is required by OCC and Federal Reserve Board regulations to notify the affected agencies that document requests calling for agency materials had been served on Chase. *See* 12 C.F.R. § 4.37(b)(3)(i) (OCC regulation requiring that OCC be "[i]mmediately notified"); 12 C.F.R. § 261.23(a)(1) (Federal Reserve regulation requiring that Board's general counsel be "[p]romptly informed").

evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the

government in the litigation; and (v) the possibility of future timidity by government employees." *In*

*re Bankers Trust Co.*, 61 F.3d at 471 (internal quotation marks omitted) (citing *In re Franklin Nat'l*

*Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979). That determination "frequently" requires

an *in camera* review by the Court.  *In re Subpoena*, 967 F.2d at 634; *see also Schreiber*, 11 F.3d at

221 ("We are not prepared to say that an *in camera* inspection is always required . . . .  We note,

however, that courts commonly do examine . . . documents *in camera* before determining whether

they fall within the claimed privilege.").  Here, good cause exists to override the privilege, since the

information is likely to be highly relevant to Plaintiffs' case; the audit materials are not otherwise

available; the litigation concerns extremely serious issues affecting homeowners across the nation;

the government's role in the litigation is minimal; and it is unlikely that ordering production of

these materials will discourage future auditors from speaking candidly.

        The seminal opinion *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y.

1979) (WEINSTEIN, J.) bears close examination in this context. In that case, the court examined

whether plaintiffs suing over the collapse of Franklin National Bank could properly require the

OCC to disclose certain bank examination reports. In ruling that the bank examination privilege

would not operate to protect the audit reports at issue, the court noted that "the examiner's

comments redacted by the government are not opinions but are factual statements by a first hand

observer of the bank." *Id.* at 585.  Moreover, where "the content [of the audit report] is primarily

reportorial and expository, not deliberative," then "[d]isclosure of such investigatory reports and

factual compilations has been held not to jeopardize the consultative function that the [bank

examination privilege] seeks to protect." *Id.* (internal citations omitted). Given what Plaintiffs know

about Chase's view about what constitutes protected material,[16] there is every reason to believe that,

---

here, as in *Franklin Nat'l*, Chase is seeking to protect material that is similarly factual in nature, rather than deliberative.

In addition, the *Franklin Nat'l* court noted that there are powerful public policy considerations that would clearly outweigh any interest the government might have in shielding the documents from disclosure. Among these, as the court said, are "[a]ccurate judicial factfinding," especially where "no satisfactory alternative source of information exists." *Id.* at 586. Here, the first-hand factual observations about how Chase was handling (or failing to handle) its responsibilities under HAMP and other mortgage-modification programs contained in these audits are simply not available to Plaintiffs from any other source, and they go directly to the heart of Plaintiffs' claims. Moreover, just as access to information about "the competency of the bank's officers and employees, the degree of supervision exercised by the directors, and the sufficiency of internal accounting controls" could all bear on the outcome of the negligence claims in *Franklin Nat'l*, so too could information about Chase's competency in managing its mortgage-modification programs bear directly on Plaintiffs' unfair and deceptive trade practice claims, among others. Just as in *Franklin Nat'l*, such factual observations in the audit materials at issue here would not just be relevant, "they are crucial." *Id.* at 587.

This Court should conclude that the bank examination privilege does not apply to any factual material over which Chase has attempted to assert it, and should, moreover, override the bank examination privilege for good cause. To the extent the Court determines there are any statements within the documents entitled to protection, those can be redacted judiciously and specifically, rather than in the blanket, overbroad fashion reflected by Chase's current posture. To the extent necessary, this task can be accomplished by *in camera* review of the documents; since the

---

[16] Again, Plaintiffs are aware of the material that Chase recently attempted to claw back from an exhibit to the Catherine Fetner deposition, have informed Chase's counsel that they dispute the attempted claw-back, and will bring the matter to the Court's attention in the form of a separate motion.

determination whether the privilege applies or ought to be overridden is ultimately for this Court, not Chase. *See In re Bankers Trust Co.*, 61 F.3d at 471; *Schreiber*, 11 F.3d at 221; *In re Subpoena*, 967 F.3d at 634.

### 2.  Earlier Date Certain for Production of Email

The parties have engaged in a meet and confer process to devise appropriate email search terms in accord with the Court's September 21 Order. That process has, by and large, been successful, and the parties have been able to agree – preliminarily – on a list of appropriate search terms. *See* Klein Decl. at Ex. 14 (Nov. 1, 2012 Letter from Ms. Amezcua to Mr. Winterhalter). Plaintiffs have responded to Chase's concerns about the breadth and relevance of certain queries among its initial set of proposed search terms by promptly agreeing to revise the terms, and have done so even in the absence of any data from Chase about the number of results each query generates. *See* Klein Decl. at Ex. 9 (Oct. 17, 2012 Letter from Mr. Winterhalter to Ms. Amezcua); Ex. 10 (Oct. 19, 2012 Letter from Ms. Amezcua to Mr. Winterhalter); Ex. 11 (Oct. 23, 2012 email from Mr. Winterhalter to Ms. Amezcua); Ex. 12 (Oct. 25, 2012 Letter from Ms. Amezcua to Mr. Winterhalter); Ex. 13 (Oct. 30, 2012 Letter from Mr. Winterhalter to Ms. Amezcua).

While the process generally has been successful, Chase has, however, misused Plaintiffs' willingness to accommodate its legitimate concerns by insisting that nearly all of Plaintiffs' queries must be revised to include certain specific words about modifications or HAMP. *See* Klein Decl at Exs. 10 and 12. While Chase claims these revisions are necessary to ensure that the searches retrieve only relevant documents, it provides no empirical basis whatsoever for its assertion that the queries as drafted by Plaintiffs would find an inordinate number of irrelevant emails. *See id*. In addition, Chase resists Plaintiffs' efforts to explain why these specific words should not be included in certain queries – i.e., that including those words will necessarily result in the loss of relevant emails – by exaggerating and mischaracterizing Plaintiffs' positions. *Compare* Klein Decl. Ex. 11

*with* Klein Decl. Ex. 12. *See also* Klein Decl. Ex. 13. Further, Chase makes claims that certain proposed searches will "enormously" burden them or "exponentially" increase the number of results without any data whatsoever about how many emails those searches actually retrieve. *See* Klein Decl. Ex. 10; Klein Decl. Ex. 12. As demonstrated throughout the meet and confer process, Plaintiffs are more than willing to work with Chase to address any issues with the search terms, but have no means of verifying Chase's claims of burdensomeness or overbreadth in the absence of empirical data from Chase about which queries generate too many results and why. There is no reason to believe, for example, that every email that is relevant to HAMP processes contains the word HAMP in its title or text.  Plaintiffs, appropriately wish to avoid making revisions to the search terms that will cause them to miss relevant emails to which they are entitled. Other limits on those terms (besides those proposed by Chase) may more appropriately circumscribe the search returns.

Perhaps most importantly, Chase has taken the unilateral stance that it will not produce any email before the existing fact discovery deadline set by the Court of November 19, 2012.  Rather, Chase says that it intends to begin its production of email on November 30, 2012. These emails and the attachments thereto will play an important role in crafting Plaintiffs' upcoming motion for class certification. Specifically, Plaintiffs anticipate that the emails may have important audits and reports as attachments, and that the emails to which they are attached will provide critical context for understanding how those audits and reports were used and understood among Chase employees. Additionally, Plaintiffs anticipate that the emails may divulge important facts about company-wide practices at Chase, especially in relation to the claims stated in Part 2 of the Complaint, which would go to the question of commonality under Federal Rule of Civil Procedure 23(a)(2). Thus, Plaintiffs respectfully ask the Court to require Chase's production of email before the deadline for

fact discovery already propounded of November 19, 2012 to allow Plaintiffs adequate time to review it in advance of class certification.

### III.    TIMING OF SUPPLEMENTAL EXPERT DISCLOSURE AND CLOSE OF DISCOVERY

Plaintiffs currently have an obligation to supplement their expert reports by November 12. Named Plaintiff and class certification discovery is set to close on November 19, 2012.  As explained above, Plaintiffs received named Plaintiffs' data and the class member data sample on the evening of November 1, 2012.  This was a mere six business days before the existing supplementation deadline.  The timing of Chase's production of the spreadhseets ordered by the Court is even more problematic.  These documents – containing hundreds of thousands of rows of data – were received a mere four days prior to the supplementation deadline.  Even if Chase's productions had been earlier, it has refused to provide Plaintiffs with the tools to fully understand this information.. In fairness, Plaintiffs therefore respectfully ask the Court to grant the relief described in this motion to permit them to obtain the information necessary to supplement their expert reports.  Plaintiffs request that the Court extend current deadlines by 30 days to allow completion of any discovery that the Court requires in light of this motion. This would make Plaintiffs' supplementation of their expert reports due on December 12, 2012 and would set the class certification discovery deadline to December 19, 2012. These changes can be made without otherwise altering the existing deadlines for the class certification motion.

### IV. CONCLUSION

Plaintiffs respectfully ask this Honorable Court to enter an order compelling Chase to produce the requested witnesses and documents. After Chase has responded to this motion, Plaintiffs further respectfully request an opportunity to provide the Court with a brief reply, especially to address any burdensomeness concerns.

## V. REQUEST FOR HEARING

Plaintiffs respectfully request a hearing on this motion. Plaintiffs believe that since the Court has not heard from the parties on any issue since the July 12, 2012 Motion to Dismiss hearing, a hearing or status conference will be helpful to apprise the Court fairly of the status of the parties' problems related to completing discovery, and to aid the Court in putting a reasonable schedule in place for the supplementation of expert reports and the class certification motion.

Dated:  November 9, 2012                                 Respectfully submitted,

| | |
|---|---|
| */s/ Gary E. Klein*<br>Gary E. Klein<br>Kevin Costello<br>Shennan Kavanagh<br>**Klein Kavanagh Costello, LLP**<br>85 Merrimac Street<br>Boston, MA 02114<br><br>Phone: (617) 357-5500<br>Fax: (617) 357-5030<br>Email: klein@kkcllp.com<br>Email: costello@ kkcllp.com<br>Email: kavanagh@ kkcllp.com | */s/ Lynn Lincoln Sark*<br>Lynn Lincoln Sarko<br>Gretchen Freeman Cappio<br>Gretchen S. Obrist<br>Ryan McDevitt<br>**Keller Rohrback L.L.P.**<br>1201 Third Ave., Ste 3200<br>Seattle, WA 98101<br><br>Phone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: lsarko@kellerrohrback.com<br>Email: gcappio@kellerrohrback.com<br>Email: gobrist@kellerrohrback.com<br>Email: rmcdevitt@kellerrohrback.com<br><br>Sharon T. Hritz<br>**Keller Rohrback L.L.P.**<br>1129 State Street, Ste. 8<br>Santa Barbara, CA  93101-6760<br><br>Phone: (805) 456-1496<br>Fax: (805) 456-1497<br>Email: shritz@kellerrohrback.com |

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
Charles Joseph LaDuca
Brendan S. Thompson
Jennifer E. Kelly
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 2002

Phone: (202) 789-3960
Fax: (202) 789-1813
Email: jonc@cuneolaw.com
Email: charlesl@cuneolaw.com
Email: brendant@cuneolaw.com
Email: jkelly@cuneolaw.com

Michael J. Flannery
CUNEO GILBERT & LADUCA, LLP
300 North Tucker Blvd., Suite 801
St. Louis, MO  63101
Tel: (202) 789-3960
Fax: (202) 789-1813
Email:  mflannery@cuneolaw.com

Alexandra C. Warren
CUNEO GILBERT & LADUCA, LLP
106-A South Columbus Street
Alexandria, VA  22314
Tel:     (202) 789-3960
Fax:     (202) 789-1813
Email:  awarren@cuneolaw.com

*/s/ Charles E. Schaffer*
Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Phone: (215) 592-1500
Fax: (215) 592-4663
Email: cschaffer@lfsblaw.com

***Interim Co-Lead Counsel for Plaintiffs***

## Certificate of Service

I hereby certify that this document was filed through the Court's CM/ECF system, which will send electronic notice of such filing to all parties or their counsel of record.

*/s/ Gary Klein*
Gary Klein