# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| IN RE: JPMORGAN CHASE MORTGAGE MODIFICATION LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Actions | Case No. 11-md-02290-RGS |
|---|---|

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.     THE MOTION TO COMPEL FIVE MORE DEPOSITIONS AFTER THE
DISCOVERY CUTOFF SHOULD BE DENIED. ............................................... 4

     A.     Plaintiffs Cannot Justify Their Vague and Limitless Request for a
Deposition on "Reports and Spreadsheets." ............................................. 4

     B.     A "Witness on Data Production" Is Neither Called for by the
30(b)(6) Notice, nor an Efficient Way to Obtain the Requested
Information. ............................................................................................... 6

     C.     Plaintiffs Are Not Entitled to Another Witness to Testify About
Audits. ....................................................................................................... 8

     D.     Plaintiffs Fail to Offer Any Justification for Their Belated and
Unfeasible Request for a 30(b)(6) Witness on the Named
Plaintiffs' Loan Transactions. ................................................................ 10

     E.     A Witness on FDCPA Compliance Is Neither Called for nor
Necessary. ............................................................................................... 12

II.     THE MOTION TO COMPEL MORE DOCUMENTS SHOULD BE
DENIED. .......................................................................................................... 14

     A.     The Bank Examination Privilege Prevents Chase from Producing
Compliance Audits by MHA-C. .............................................................. 14

     B.     It Is Not Possible or Necessary for Chase to Produce Emails on
Monday. ................................................................................................... 19

CONCLUSION ............................................................................................................... 20

TABLE OF AUTHORITIES

**CASES**                                                **PAGE**

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*,
   244 F.3d 189 (1st Cir. 2001).......................................................................................4, 8, 13

*Amorim Holding Financeira S.G.P.S., S.A. v. C.P. Baker & Co.*,
   No. 09-10641, 2011 U.S. Dist. LEXIS 134877 (D. Mass. Nov. 22, 2011)..............................3

*Cutter v. HealthMarkets, Inc.*,
   No. 10-11488, 2011 U.S. Dist. LEXIS 13593 (D. Mass. Feb. 10, 2011)..................................3

*In re Bank One Sec. Litig.*,
   209 F.R.D. 418 (N.D. Ill. 2002) ................................................................................17, 18, 19

*In re Bankers Trust Co.*,
   61 F.3d 465 (6th Cir. 1995).........................................................................................15, 18

*In re CitiMortgage HAMP Litig.*,
   No. MDL 11-2274-DSF  (C.D. Cal. June 7, 2012) ..................................................................15

*In re Franklin Nat'l Bank Sec. Litig.*,
   478 F. Supp. 577 (E.D.N.Y. 1979)........................................................................................17

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) ...............................................................................................16

*In re Grand Jury Proceedings*,
   417 F.3d 18 (1st Cir. 2005).....................................................................................................16

*In re Subpoena Served upon Comptroller of Currency*,
   967 F.2d 630 (D.C. Cir. 1992)...............................................................................................14

*Johnson v. Geico Cas. Co.*,
   269 F.R.D. 406 (D. Del. 2010) ................................................................................................5

*Linde v. Arab Bank, PLC*,
   No. 04-cv-2799, 2009 U.S. Dist. LEXIS 86021 (E.D.N.Y. Sept. 21, 2009)...........................17

*National Union Fire Ins. Co. v. Midland Bancor, Inc.*,
   159 F.R.D. 562 (D. Kan. 1994) ............................................................................................15

*Promega Corp. v. Applera Corp.*,
   No. 01-C-22-C, 2002 WL 32340886 (W.D. Wis. Nov. 27, 2002) .........................................12

*Schreiber v. Soc'y for Sav. Bancorp, Inc.*,
   11 F.3d 217 (D.C. Cir. 1993)................................................................................................18

*Union Planters Bank, N.A. v. Cont'l Cas. Co.*,
    No. 02 CV 2321, 2003 U.S. Dist. LEXIS 24441 (W.D. Tenn. Nov. 26, 2003) ..................... 15

*United States ex rel. Fago v. M & T Mortg. Corp.*,
    235 F.R.D. 11 (D.D.C. 2006) .............................................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ......................................................................................................... 20

## STATUTES & RULES

5 U.S.C.A.
    § 641 ...................................................................................................................................... 16
    § 1906 .................................................................................................................................... 16

Fed. R. Civ. P.
    23 ............................................................................................................................................. 2
    26(b)(1) .................................................................................................................................... 3
    26(b)(2)(C) .......................................................................................................................... 3, 4
    26(b)(5)(B) ............................................................................................................................ 16
    30(a)(2)(A)(ii) ........................................................................................................................ 13

Federal Rule of Civil Procedure 26(b) ........................................................................................ 3, 4

# INTRODUCTION

A week after the fact discovery cutoff, and on the eve of their supplemental expert disclosure deadline, plaintiffs moved to compel:

(1)    Five additional so-called 30(b)(6) witnesses, beyond the 17 Chase witnesses plaintiffs have already deposed;

(2)    Making Home Affordable-Compliance ("MHA-C") audit materials that Chase cannot disclose because they are covered by the bank examination privilege;

(3)    The production of emails by November 19, which is both unnecessary and not possible; and

(4)    A one-month extension on plaintiffs' November 12, 2012 expert disclosure deadline, which the Court has already extended four times.[1]

Plaintiffs should not be permitted to delay this action through yet another discovery motion.  Over the past year, plaintiffs' pattern has become clear—they file a lengthy motion to compel; win some portion of it; receive additional documents and depositions; and then, when their next Court-ordered deadline expires, start the process all over again by arguing that the newly-produced information necessitates yet another round of documents and depositions, and yet another extension.

It is time for this perpetual cycle of discovery to come to an end.  The Court has already extended the case schedule—which originally contemplated that class certification briefing would be complete by now—six times.  Plaintiffs have not articulated any legitimate need for the additional witnesses and documents they now move to compel, nor any plausible explanation for their delay in seeking them.  Plaintiffs' motion to compel should be denied.

---

[1] Chase addresses plaintiffs' first three requests in this brief.  It addresses the fourth request in its opposition to plaintiffs' "emergency motion for extension of certain deadlines," which expands on plaintiffs' November 9, 2012 request for an extension.

## BACKGROUND

In November 2011, the Court set the following deadlines:  opening expert disclosures on April 2, 2012, discovery cutoff on May 18, 2012, and plaintiffs' class certification motion on August 1, 2012.  (ECF No. 22 at 2-3.)  The Court instructed, "The court will expect plaintiffs to present the certification issues at the earliest practical time as Fed. R. Civ. P. 23 contemplates and, in any event, no later than the date specified in the court's Order." (*Id.* at 2.)  It did so after deciding against bifurcated discovery, thereby exposing Chase to the full breadth of fact discovery during the time set by the scheduling order.  (*See id.*)

In February and March 2012, plaintiffs served 84 document requests and their Rule 30(b)(6) deposition notice with 27 areas of inquiry, to which Chase timely responded.  In total, Chase has reviewed over 1.45 million pages and produced over 274,215 pages of documents in response to plaintiffs' requests.  (Dresser Decl. ¶ 2.)  Plaintiffs have already taken the depositions of *ten* 30(b)(6) witnesses, and another five individually-named Chase employees and two former employees.  (*See* App'x A.)

As discussed in more detail below, the parties met and conferred about 30(b)(6) depositions from late May through early June.  (Dresser Decl. ¶ 3.)  On June 15, plaintiffs terminated the conference the parties were conducting regarding Rule 30(b)(6) witnesses. (*Id.* ¶ 4.)  Plaintiffs said nothing substantive on the topic until September.  (*See id.* ¶ 5.)  As to the MHA-C audits, Chase has always said that it would withhold audit-related documents based on the bank examination privilege, and produced a privilege log detailing documents it withheld on that basis in October.  (*See* Dresser Decl. Ex. 4 at 39, 53; Klein Decl. Ex. 8; ECF No. 137 at 24.)  Similarly, Chase has been clear about the large amount of time necessary to collect and produce the requested emails.  (*See, e.g.*, ECF No. 143 ¶¶ 7-9.)

What plaintiffs *have* done during the discovery period is file no fewer than ten discovery motions, the majority of which were accompanied by deadline extension requests.  (ECF Nos. 74, 88, 105, 114, 124, 132, 155, 173, 178, 183.)  And, as detailed in Chase's accompanying opposition to plaintiffs' November 13, 2012 "emergency motion" to extend deadlines, the present motion is plaintiffs' *eighth* effort to extend Court-ordered deadlines in this action.  (*See* ECF Nos. 27, 40, 47, 48, 88, 100, 124.)

## ARGUMENT

Federal Rule of Civil Procedure 26(b) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1).  The party seeking the discovery bears the burden of showing the relevance of the request.  *See Cutter v. HealthMarkets, Inc.*, No. 10-11488, 2011 U.S. Dist. LEXIS 13593, at *6 (D. Mass. Feb. 10, 2011).  There are limits to the bounds of even relevant discovery.  Rule 26(b) also provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery" if the discovery sought is unreasonably cumulative or duplicative, the discovering party has had ample opportunity to obtain the information, or the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C); *see also Amorim Holding Financeira S.G.P.S., S.A. v. C.P. Baker & Co.*, No. 09-10641, 2011 U.S. Dist. LEXIS 134877, at *4 (D. Mass. Nov. 22, 2011) (A motion to compel should be denied where "the burden of the proposed discovery will outweigh its likely benefit.").

In order to obtain additional 30(b)(6) depositions, plaintiffs must show that: (1) the discovery sought is not unreasonably *cumulative or duplicative* or *obtainable from another source* that is more convenient, less burdensome, or less expensive; (2) they did not otherwise have the *opportunity to obtain the information* sought; and (3) the *burden or expense* of the

proposed discovery does not outweigh its likely benefit.  *See* Fed. R. Civ. P. 26(b)(2)(C);

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001).  For

instance, in *Ameristar*, the First Circuit rejected a request for three additional 30(b)(6) witnesses,

where the request was "belated, duplicative and cumulative," and the plaintiff presented no

evidence that "any new, relevant information will be obtained . . . [that] will contradict the

testimony of [the two corporate] representatives already deposed."  *Ameristar Jet Charter, Inc.*,

244 F.3d at 193.

I.    **THE MOTION TO COMPEL FIVE MORE DEPOSITIONS AFTER THE
      DISCOVERY CUTOFF SHOULD BE DENIED.**

Plaintiffs move to compel at least five additional purported Rule 30(b)(6) witnesses.  As

an initial matter, two of the five requested depositions are not even the subject of a pending

30(b)(6) notice.  And, plaintiffs fail to present facts sufficient to satisfy their burden under

Rule 26(b) to justify any of these current, belated deposition requests.

A.    **Plaintiffs Cannot Justify Their Vague and Limitless Request for a Deposition
      on "Reports and Spreadsheets."**

The first additional witness plaintiffs seek is "[a] witness or witnessed [sic] concerning

reports and spreadsheets that contain loan level account data pursuant to Rule 30(b)(6)."  (MPA

at 1.)  Plaintiffs fail to articulate any basis for putting Chase to the cost of yet another witness to

answer unspecified questions about "reports and spreadsheets."  Plaintiffs claim they are

"[w]ithout a witness who can explain the reports and their uses" (MPA at 6), but plaintiffs took

Ms. Shine's deposition on August 23, 2012, at which time they had ample opportunity to

question her about the substance or use of the reports that she maintains, and indeed did so.  (*See*

Dresser Decl. ¶ 7, Ex. 7.)  And plaintiffs, as part of their standard deposition template, asked

nearly all of the ten 30(b)(6) witnesses about the "reports" they might have seen or created.

Plaintiffs attempt to articulate a need by complaining that "the reports [Chase] produced are complicated." (MPA at 5-6.) But they fail to identify any particular issues on which they have not already had the opportunity to question multiple witnesses. The only specific example plaintiffs provide is the date range of reports that Chase produced after Ms. Shine's deposition, which Ms. Shine discussed *at her deposition.* (*See id.* at 6.)[2] Such generalized questions do not outweigh the burden of producing yet another 30(b)(6) witness on this topic. *See Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 415 (D. Del. 2010). Chase offered to address plaintiffs' specific questions about fields and codes on an informal basis. (Dresser Decl. Ex. 19 at 2.) That was the abundantly reasonable way to handle any legitimate questions plaintiffs may have had. Plaintiffs chose to file a motion to compel instead. (*Id.* Ex. 21.)

Not only would the additional 30(b)(6) witness on plaintiffs' proposed topic be unnecessary and duplicative, it would be burdensome and impractical. Chase has produced hundreds of different reports and spreadsheets in this case. For example, Chase has produced about 850 Excel documents alone. (Dresser Decl. ¶ 6.) It is not feasible for a witness to testify on every single modification-related report Chase has prepared.

Plaintiffs imply that the reason for their untimely[3] motion here is that Chase only just produced the relevant documents on November 2, 2012. (*See* MPA at 5.) That is untrue. Chase has been producing reports and spreadsheets on a rolling basis since at least August 31, 2012.

---

[2] Plaintiffs need not "speculate" as to the answer to their question. If they had asked Chase before they filed the present motion, Chase would have answered—those reports date back only to 2011. (Dresser Decl. ¶ 6.)

[3] The parties met and conferred about this topic in early June. (Dresser Decl. Ex. 5 at 8-9; Ex. 6.) Chase explained that there was "no practicable way for any person or set of persons to be able to speak to these issues when framed this broadly." (*Id.* Ex. 5 at 8.) Plaintiffs waited until September to follow up. (*Id.* Ex. 9.) In response, Chase has consistently maintained that the topic is overbroad and that it is impracticable for a witness to be prepared to speak on the topic. (*Id.* Ex. 12 at 2.)

(Dresser Decl. ¶ 6.)  Two months ago, in ruling on plaintiffs' previous motion to compel additional reports, the Court noted that Chase had already "begun to produce[] reports regarding such [modification] programs."  (ECF No. 149 at 2; *see also* ECF No. 137 at 19-20 (identifying several types of reports and spreadsheets Chase had produced as of September).)  Chase continued the production, and sent its *last* installment of reports on November 2, 2012, as it had agreed to do (ECF No. 137 at 21).  That November 2 production included *only* certain reports Ms. Shine mentioned at her deposition.  Plaintiffs' request here for a witness to testify about those reports illustrates the absurdity of plaintiffs' position.  Chase cannot be required to produce a new witness (who will undoubtedly be asked about additional documents) each time Chase produces a requested document.  Requiring Chase to do so would result in an infinite loop of discovery.

**B.    A "Witness on Data Production" Is Neither Called for by the 30(b)(6) Notice, nor an Efficient Way to Obtain the Requested Information.**

Plaintiffs request another "30(b)(6) witness" to testify about Chase's November 1, 2012 production of named plaintiff and borrower data.  (*See* MPA at 7.)  The first problem with this request is that plaintiffs' Rule 30(b)(6) deposition notice does not call for such a witness, even though plaintiffs served the deposition notice a month after they served their request for production of the data.  Plaintiffs try to shoehorn this topic into Areas of Inquiry 20 and 22 of their Rule 30(b)(6) notice.  (*See* MPA at 6 n.6.)  Chase addresses the Area 20 request in more detail in section I.D below, but notes that it does not apply to the data sample.  Area 20 relates only to "the named Plaintiffs' modification processes" and loan files.  (MPA at 8; Klein Decl. Ex. 1 at 8.)  Plaintiffs do not explain how that relates to their request here for a witness on the data sample for 800-plus borrowers that Chase produced from its InfoOne data repository, ostensibly for plaintiffs' experts' analysis at class certification.  (*See* MPA at 8; Klein Decl. Ex. 1

6

at 8.)  Similarly, Area 22 only asks generally for a witness on "electronic system(s)" that Chase

uses.  (Klein Decl. Ex. 1 at 9.)  Chase has already offered *two* 30(b)(6) witnesses to testify about

that topic, and plaintiffs obtained testimony on it at nearly every other Chase deposition they

have taken as well.  (*See* App'x A.)

     Despite this, Chase has tried to work cooperatively with plaintiffs to address any

questions they have about the InfoOne data.  After the Court issued its September 14, 2012 order

requiring data production, Chase immediately began working on collecting the data and

conferring with plaintiffs about the process.  (*See* Dresser Decl. Ex. 13.)  On October 9, 2012,

after investigating the most efficient method to collect and produce the data, Chase's counsel

wrote plaintiffs a detailed letter explaining Chase's proposed methodology and inviting plaintiffs

to comment.  (*See id.* Ex. 14.)  Plaintiffs responded with one suggestion, which Chase

implemented.  (*See id.* Ex. 15.)  On October 15, Chase gave plaintiffs an update that (i) the data

extraction was well underway, (ii) Chase would produce the data by the then-current November

2, 2012 discovery cutoff, and (iii) Chase would agree to extend plaintiffs' supplemental expert

disclosure deadline to November 12, 2012.  (*Id.* Ex. 16.)  Plaintiffs agreed to that extension, and

Chase rightfully expected that that it would provide plaintiffs with adequate time to review the

data.  Chase produced the data one day early, on November 1, 2012.  (*See id.* Exs. 22, 23.)

Plaintiffs downloaded the data that same day.  (*See id.* Ex. 24.)

     As Chase explained weeks ago, no one witness could testify about the millions of fields

of information plaintiffs requested and Chase produced.  Due to the breadth of plaintiffs'

document requests, the InfoOne data production contains over 1.5 million fields of data

regarding over 800 loans.  (Dresser Decl. ¶ 2.)  Chase has provided plaintiffs the "data

dictionary" they requested, and has consistently offered to confer with plaintiffs regarding

legitimate questions about the data that plaintiffs may have.  (Dresser Decl. Exs. 19, 26, 27.)
Again, that was the fair and reasonable way to handle any legitimate follow up questions
plaintiffs may have had.  Again, plaintiffs opted to file a motion to compel instead.

### C.     Plaintiffs Are Not Entitled to Another Witness to Testify About Audits.

Plaintiffs move to compel a second additional witness to testify about the audits Chase
produced.  Again, the deposition would be "belated, duplicative and cumulative," *see Ameristar
Jet Charter, Inc.*, 244 F.3d at 193, and plaintiffs have not met their burden of showing why it
should go forward.

Chase designated Ms. Fetner to testify about audits over a year ago, in *Durmic*.  (Dresser
Decl. Ex. 1 at Topic 10, Ex. 2 at 9:16-10:22.) [4]  Accordingly, Chase objected to plaintiffs'
Rule 30(b)(6) Area of Inquiry 17, which covers audits,[5] because (1) it seeks to re-depose Chase
regarding testimony already offered in *Durmic*, and (2) it is "impracticable for any witness to
memorize every single policy, practice, and procedure for assuring compliance with HAMP and
every single audit performed regarding modifications."  (*See* Dresser Decl. Ex. 3 at 12.)  Chase
reiterated its position in June 2012.  (*See* Ex. 5 at 8.)  Plaintiffs waited until after they had filed
what appeared to be their omnibus motion to compel in September (*see* ECF No. 114-1) to raise
the issue again, and Chase responded as it had before.  (*See* Dresser Decl. Ex. 9 at 2; Ex. 12 at 2.)
Plaintiffs offer no explanation for waiting half a year after Chase explained its position, two

---

[4] While some inadvertently-produced privileged audit information was the subject to instructions
not to answer at Ms. Fetner's deposition, the vast array of audit material was available to
plaintiffs.

[5] Plaintiffs state that Area of Inquiry 26 also covers audits.  (MPA at 7.)  That area relates to
Chase's "policies, practices and procedures for ensuring the accuracy of the terms of Temporary
Payment Agreements or Loan Modification Agreements under HAMP and/or other Modification
Programs[.]"  (Klein Decl. Ex. 1 ¶ 26.)  Plaintiffs already deposed two Chase witnesses
regarding this Area of Inquiry.  (*See* App'x A.)

months after their last motion to compel, and two weeks after the discovery cutoff to raise this issue.

Plaintiffs suggest that Chase seeks to "subvert appropriate inquiries" by "late production" (MPA at 8), but Chase's production of audit materials was not late.  Chase produced the vast majority of non-privileged audit materials nearly a month before the November 2 discovery cutoff, on October 8.  (*See* Dresser Decl. Ex. 20 at 1.)  Plaintiffs simply failed to timely raise this issue.

In any event, plaintiffs have not articulated a legitimate need for an additional witness.  Plaintiffs say a witness is needed to testify about the "substance" and "purpose" of the audits, and the "changes" Chase made in response to them.  (MPA at 8.)  But all of that information is apparent from the face of the documents.  (*See, e.g.*, Dresser Decl. Sealed Ex. 29 at 3-5 (stating auditor's findings and recommendations as well as Chase's response); Sealed Ex. 30 at 3 (explaining purpose of review and basis for findings).)  Plaintiffs' primary goal appears to be contesting Chase's redactions.  (*See, e.g.,* MPA at 8.)  Chase explained to plaintiffs on October 29, 2012, that it had produced, without redaction, findings regarding the speed or accuracy of its process for evaluating borrowers for modification and its communications to borrowers regarding the same, but that it had redacted—as contemplated by the Protective Order—highly sensitive audit findings regarding non-responsive topics such as escrows, hazard insurance, tax adjustments, and investor reporting.  (Dresser Decl. ¶ 8; Dresser Decl. Ex. 20 at 1-2.)  Plaintiffs did not object.  (*See* Dresser Decl. ¶ 8.)  And, as plaintiffs admit, Chase produced a redaction log on November 9 further "explaining the basis for redactions of the audit materials that have been produced."  (Dresser Decl. Ex. 20 at 2.)

Before receiving—let alone reviewing—Chase's log, plaintiffs elected to file the present motion.  The log may address all of plaintiffs' concerns.  Even if it does not, another 30(b)(6) witness would not resolve any remaining questions:  such a witness would not be required to testify about sensitive and confidential materials that are not relevant to the subject matter of this action, any more than Chase is required to produce such materials.  If plaintiffs have legitimate questions about the redaction log, Chase remains willing to meet and confer about those questions.  (*See id.*)  Thus no additional 30(b)(6) witness is necessary.

**D.     Plaintiffs Fail to Offer Any Justification for Their Belated and Unfeasible Request for a 30(b)(6) Witness on the Named Plaintiffs' Loan Transactions.**

Plaintiffs fail to carry their burden of showing how the benefit of a 30(b)(6) witness or witnesses on the named plaintiffs' transactions outweighs the burden to Chase to meet this demand now.[6]  Plaintiffs fail to specify *any* specific information they hope to gain from such a deposition.  Indeed, Chase has always offered and remained available to research any legitimate questions plaintiffs had about the loan files, which Chase started producing over a year ago, but plaintiffs have *never* taken them up on the offer.  (*See* Dresser Decl. Ex. 5 at 9.)  They have never articulated a single, specific question about the named plaintiffs' loan files, let alone articulated what the purpose of a deposition would be.  (*See* MPA at 8-10.)  So to here:  beyond bare assertions of relevance, typicality, and commonality, plaintiffs fail to identify *any* specific information they seek or how they would use such information.  (*See* MPA at 8.)

---

[6] As with plaintiffs' other requests, this is also untimely.  The parties met and conferred about plaintiffs' request for 30(b)(6) testimony on the named plaintiffs' transactions in early June. (Dresser Decl. Exs. 5, 6.)  On June 5, 2012, Chase objected to the topic for the reasons discussed herein.  (*Id.* Ex. 5 at 9.)  On June 8, 2012, plaintiffs offered "to narrow this area of inquiry to decision-making about the Named Plaintiffs' Modifications."  (*Id.* Ex. 6 at 7.)  Chase did not accept the proposal, and Plaintiffs then waited until three months later, on September 7, 2012, to raise the issue again.  (*Id.* Ex. 9 at 3.)  In response, Chase has consistently objected that this topic is overbroad and impractical.  (*Id.* Ex. 12 at 3.)

Instead, plaintiffs complain that Chase has yet to provide "empirical evidence" of its

burden. (*Id.* at 9.)  Putting aside the fact that the burden remains on plaintiffs here, Chase notes

that the average length of a named plaintiff's loan file in this case is 3,850 pages.  (Dresser Decl.

¶ 9.)  The files range from 1,429 and 7,257 pages.  (*Id.*)  Each file details transactions across

numerous subject areas beyond any modification process, including loan origination, payment

histories, refinancing, credit, and foreclosure.  In total, approximately 100 to 150 employees are

typically involved in each borrower's loan file.  (*See* ECF No. 84 ¶ 4.)  At least 21 of the named

plaintiffs have loan files from lenders other than Chase, including EMC and Washington Mutual.

(Dresser Decl. ¶ 10.)  And that is just the loan files.  Chase also produced, at plaintiffs' request,

electronic data pulled from its information repository, InfoOne.  That data set contains over

77,000 fields about the named plaintiffs alone.  (*Id.* ¶ 9.)

Given the breadth of plaintiffs' request and the scope of the loan files at issue in this case,

there is no witness or set of witnesses who could remotely to speak on the vast scope of

information available for each of the named plaintiffs' loan transactions.  Even during their own

depositions, the named plaintiffs were unable to recall the details of their own loan transactions.

Plaintiffs' purported "compromise" to exclude policy and practice questions from the scope of

inquiry (MPA 8) does not make it any more feasible to produce a witness or set of witnesses

because the burden described above would remain the same.

Plaintiffs are correct insofar as they state a 30(b)(6) deponent should testify about

information "known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6); *see*

MPA 9-10.  However, courts have acknowledged that it is unreasonable to demand a 30(b)(6)

witness to testify about specific information for a large number of loans and the detailed

information involved in processing each loan.  For example, a district court declined to order a

30(b)(6) witness to testify about 63 different loans and the lender's employees who audited the loans, explaining, "[a]lthough Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide." *United States ex rel. Fago v. M & T Mortg. Corp.*,  235 F.R.D. 11, 24-25 (D.D.C. 2006); *see also Promega Corp. v. Applera Corp.*, No. 01-C-22-C, 2002 WL 32340886, at *4 (W.D. Wis. Nov. 27, 2002) (ordering plaintiffs to narrow a 30(b)(6) request for "[i]nformation contained in the [defendant's] database(s) produced by [defendant] relating to the accused products," because it is "unrealistic to expect a deponent to be intimately familiar with the details of every individual transaction described in a database").  In seeking 30(b)(6) testimony on the named plaintiffs' loan transactions, plaintiffs' request is similarly unreasonable, and would only serve to delay this action.

### E.    A Witness on FDCPA Compliance Is Neither Called for nor Necessary.

Plaintiffs' request for a "30(b)(6) . . . witness or witnesses concerning policies and procedures relevant to Chase's compliance with the Fair Debt Collection Practices Act" (ECF No. 178 at 2) should be denied because plaintiffs failed to serve a proper notice on this topic. Plaintiffs attempt to excuse their failure by mischaracterizing Chase's meet and confer on this topic as "bait and switch."  (MPA at 12.)  But, Chase's counsel never offered or agreed to produce a 30(b)(6) witness on FDCPA compliance.  (*See* Lin Decl. ¶ 4.)  Instead, in June, counsel informed plaintiffs that the term "FDCPA compliance" in plaintiffs' document requests was extremely broad, and that counsel needed to know more precisely what plaintiffs were seeking.  (*Id.* ¶ 2)  Plaintiffs then tabled the issue and waited until September 7, 2012 to raise the issue again.  Chase did offer to consider plaintiffs' request, and did so in good faith, but ultimately concluded that the topic was neither practical nor properly noticed.  (Dresser Decl. Ex. 12; *see also* MPA at 11.)

The fact remains that plaintiffs did not properly notice a Rule 30(b)(6) deposition on FDCPA compliance.  The law in the First Circuit is clear that Federal Rule 30 requires leave of court to obtain an additional 30(b)(6) witness on a topic not included in a party's Rule 30(b)(6) notice.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir. 2001).  In *Ameristar Jet Charter, Inc.*, the First Circuit affirmed the district court's decision to quash the plaintiff's second Rule 30(b)(6) deposition subpoena, because the plaintiff had already issued one 30(b)(6) deposition subpoena, two corporate representatives had testified pursuant to that first subpoena, and the plaintiff failed to obtain leave of court.  244 F.3d at 192.  Here, plaintiffs concede that they did not include the FDCPA topic in their extensive, original 30(b)(6) deposition notice.  (MPA at 11; *see generally* Klein Decl. Ex. 1.)  Plaintiffs tried to remedy that failure by serving Chase with a last-minute "supplemental 30(b)(6) notice" (Klein Decl. Ex. 7 ¶ 28), but failed to obtain leave of court to do so.  The second notice is plainly improper, and plaintiffs' motion to compel another 30(b)(6) witness pursuant to that notice should be denied on that basis alone.

Chase also notes that there is no need for such a deposition, as plaintiffs' proposed FDCPA topic covers topics for which Chase has already provided witnesses.  The topic includes "communications of any and all forms with Borrowers in Modifications or being considered." (*Id.*)  Defendants made five 30(b)(6) witnesses available to testify on topics regarding communications with borrowers concerning HAMP and other modification programs, and plaintiffs have deposed at least three current and former call center employees who testified on those same topics.  (*See* App'x A.)

Plaintiffs' alternate proposal for a "full production of documents responsive to RFPs 18, 19, and 22" is equally unjustified.  (MPA at 12.)  In response to these RFPs, Chase already

produced "final versions of policies and procedures for communicating with borrowers who have

applied for modifications about past-due payments, to the extent that such policies and

procedures differ from those generally applicable to borrowers whose loans are serviced by

Chase."[7]  (Dresser Decl. Ex. 4 at 18; *see also id.* at 20.)  By way of example, Chase produced

approximately 2,960 documents with the term "FDCPA" or the phrase "Fair Debt Collection

Practices Act."  (Dresser Decl. ¶ 11.)  Plaintiffs fail to carry their burden of showing how they

would benefit from additional discovery on this topic, or even to identify what else they need.

For all these reasons, plaintiffs' motion to compel a "30(b)(6) witness" or additional documents

regarding FDCPA compliance should be denied.

## II.  THE MOTION TO COMPEL MORE DOCUMENTS SHOULD BE DENIED.

### A.  The Bank Examination Privilege Prevents Chase from Producing Compliance Audits by MHA-C.

Plaintiffs move to compel production of compliance audits by MHA-C, a division of

Treasury.[8]  Chase has a duty to keep such bank examination documents confidential.  *See In re*

*Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633-34 (D.C. Cir. 1992).  In fact,

---

[7] Chase notes that Plaintiffs' RFPs 18, 19, and 22 are grossly overbroad.  For example, RFP 19 asks for "All Documents that Relate to Your compliance with the Fair Debt Collection Practices Act."  "All" such documents, related to Chase's compliance with the FDCPA in any of its lines of business, are not relevant here, and plaintiffs do not contend otherwise.

[8] In their motion, plaintiffs move to compel only "MHA-C audits that require the Court to overrule assertions of 'bank examiner's' privilege" (ECF No. 178 at 2).  In their brief, plaintiffs suggest that they are also requesting "other compliance audit materials relating to HAMP" (MPA at 12-13), but fail to identify what documents they seek, though they could have based a request on the privilege log produced to them.  Thus, Chase addresses only MHA-C audits here.  To the extent plaintiffs seek other audit documents, the same arguments Chase makes here would apply.  Chase also notes that plaintiffs incorrectly state that they "asked Chase to produce *any* materials relating to audits by [MHA-C]" (*id.* at 12 (emphasis added)).  That is wrong, and inconsistent with the Court's order.  (*See* ECF No. 149 at 3 (ordering Chase to produce *only* "non-privileged final audit findings regarding the speed or accuracy of its process for evaluating borrowers for modification and its communications to borrowers regarding that process")).)

Chase could be subject to criminal penalties if it produced such documents.  *See* 5 U.S.C.A. § 641 (OCC), § 1906 (FDIC).  Chase thus withheld materials relating to MHA-C's audits and provided plaintiffs with privilege logs on October 8 and November 2, identifying the documents Chase withheld.  Plaintiffs do not dispute that the bank examination privilege applies to the MHA-C reports, Chase's responses, and related communications.  (*See* MPA at 14 ("MHA-C . . . could assert the privilege.").)  Rather, they inappropriately rely on their assessment of a privileged document in an attempt to justify the *in camera* review of withheld documents.

As an initial matter, plaintiffs' motion is premature.  As the court in a parallel loan modification MDL involving the same plaintiffs' counsel recently held, plaintiffs may not move to compel the production of privileged examination information until they have first contacted the agency that holds the privilege, and followed the agency's procedures for obtaining the information.  *In re CitiMortgage HAMP Litig.*, No. MDL 11-2274-DSF, Dkt. 86 at 13 (C.D. Cal. June 7, 2012).[9]  This is because, as plaintiffs recognize, the privilege belongs to the agency that conducted the audit.  (MPA at 14.)  Plaintiffs rely on *In re Bankers Trust Co.*, 61 F.3d 465, 470-71 (6th Cir. 1995) (MPA at 13, 14), but the Sixth Circuit is in the minority here.  And even the minority of courts that do not require parties to exhaust administrative remedies agree that an agency "must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion."  *In re Bankers Trust Co.*, 61 F.3d at 470-71.  Here, Chase has notified Treasury of plaintiffs' requests, and Treasury must be given the opportunity to respond.[10]

---

[9] *See also, e.g.*, *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 571 (D. Kan. 1994); *Union Planters Bank, N.A. v. Cont'l Cas. Co.*, No. 02 CV 2321, 2003 U.S. Dist. LEXIS 24441, at *8 (W.D. Tenn. Nov. 26, 2003).

[10] Plaintiffs imply that Chase's notification is somehow untimely (*see* MPA at 15 n.15), but Chase could not notify Treasury until it had identified the documents responsive to plaintiffs' requests.

Moreover, plaintiffs' request for *in camera* review is highly improper because it is based on an inadvertently disclosed privileged document.  (*See* MPA at 13 n.12 (plaintiffs conducted "side-by-side comparison of the unredacted and redacted version" of document at issue), 15, 17 n.16.)  Plaintiffs have waived their objection to Chase's assertion of privilege in this document under the protective order.[11]  What is more, plaintiffs' use of the privileged document violates the Federal Rules of Civil Procedure, which state that, after a party is notified of a claim of privilege, it "*must not use* or disclose the information until the claim is resolved." Fed. R. Civ. P. 26(b)(5)(B) (emphasis added).  Plaintiffs' use of the document also violates the Protective Order, which requires plaintiffs to "return the inadvertently disclosed documents . . . *and not retain copies thereof*."  (ECF No. 57 ¶ 12 (emphasis added).)  Plaintiffs have not specifically identified any other document for which they contest privilege, which does not allow Chase to respond with specificity to a request that the privilege should be overruled or that *in camera* review is necessary.  That said, plaintiffs' basis for their argument inappropriately relies on a document that they must not use—and that use includes providing a copy to this Court with their motion—and their motion to compel "MHA-C audits" should be denied for this reason alone.

Even if the basis for plaintiffs' argument that Chase has withheld documents containing factual material could be credited, their definition of "factual material" is overbroad.[12]  Plaintiffs

---

[11] The Protective Order allows the discovering party to "[w]ithin fourteen (14) days of [notice of inadvertent disclosure] and receipt of substitute copies . . . inform the Producing Party in writing that it opposes the return of such information."  (ECF No. 57 ¶ 12.)  Plaintiffs failed to notify Chase that they challenged the designation within 14 days of Chase's October 18 letter, which notified them of inadvertent disclosure, and provided a substitute redacted copy, of the document at issue.  (*See* Dresser Decl. Ex. 17).

[12] *In camera* review "is an intrusion which must be justified."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992).  Thus the party seeking the review must make a factual showing sufficient to support a "reasonable, good faith belief that in camera inspection may

*[Footnote continued on following page.]*

rely primarily on *In re Franklin National Bank Securities Litigation*, 478 F. Supp. 577, 582

(E.D.N.Y. 1979) for the proposition that the audit findings at issue should be produced.  (*See*

MPA at 17.)  But *In re Franklin National* is the exception that proves the rule.  The court there

limited its holding to the "unique circumstances" of that case:  the knowledge of the Office of the

Comptroller of the Currency (OCC) officials of the financial condition of the bank was "directly

in issue"; the inability of the bank regulatory system to detect and prevent the bank's failure

required "thorough exploration"; and the OCC itself—having had an opportunity to weigh in on

the privilege assertion—did "not consider that revelation of much of the material . . . would

disrupt future deliberative processes of the agency." 478 F. Supp. at 586-87.  The court held that

disclosure of the material at issue in that case would "*not* insure that all future reports will be

similarly disclosed."  *Id.* at 587 (emphasis added).  Moreover, the court noted that "the line

between 'fact' and 'opinion,' . . . is neither distinct nor fixed."  *Id.* at 582.

  In one of the few cases where courts have addressed the line between factual and

deliberative material, the court held that the *manner* in which the defendant received requests for

information from the agency was factual, but the *content* of those requests—as well as any

information that was "received directly or indirectly from bank examiners"—was deliberative.

*See Linde v. Arab Bank, PLC*, No. 04-cv-2799, 2009 U.S. Dist. LEXIS 86021, at *10 (E.D.N.Y.

Sept. 21, 2009); *see also In re Bank One Sec. Litig.*, 209 F.R.D. 418, 427-28 (N.D. Ill. 2002)

(examination reports can be predominantly evaluative and should not be produced).  Consistent

with that rule, Chase withheld deliberative material but provided the factual information,

including the manner in which Chase received requests, in its privilege log.

---

*[Footnote continued from previous page.]*

reveal evidence that information in the materials is not privileged."  *Id.*; *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005).

To the extent that factual and deliberative material is "intertwined," the privilege can only be "overridden for good cause." *Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993). The party seeking to override the privilege bears the burden of demonstrating good cause. *See In re Bankers Trust*, 61 F.3d at 471. In determining whether good cause exists, courts consider five factors: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possible effect of future government employee communications. (MPA at 15-16 (citing *In re Bankers Trust*, 61 F.3d at 471).) Plaintiffs' conclusory statements that the five factors weigh in their favor are insufficient to meet the burden of demonstrating good cause.

For example, plaintiffs state that the "audit materials are not otherwise available." (MPA at 16.) But as courts in similar cases have held, where a bank has already provided "the raw factual materials underlying the[] opinions" in the requested bank examination reports, the requesting party can "use [its] own expertise to render opinions on these facts." *In re Bank One*, 209 F.R.D. at 427. Chase has already provided plaintiffs with the factual materials underlying Treasury's opinions, including numerous reports and spreadsheets that contain loan-level data produced pursuant to the Court's September 21 Order. (*See, e.g.*, Dresser Decl. Sealed Ex. 32.) Chase has also produced numerous other documents regarding "information about Chase's competency in managing its mortgage-modification programs." (MPA at 17; *see also* Dresser Decl. Sealed Ex. 31 at 21-25; Exs. 29-30.) Moreover, there is publicly-available information about Treasury's view of Chase's and other banks' handling of modification programs. (*See, e.g.*, Making Home Affordable Reports and Servicer Assessments, available at http://www.treasury.gov/initiatives/financial-stability.) Plaintiffs can use their own experts to

render opinions on these facts, without relying on MHA-C's privileged and confidential audit materials, and so the bank examination privilege should not be overridden.[13]

**B.     It Is Not Possible or Necessary for Chase to Produce Emails on Monday.**

Plaintiffs move for an order requiring Chase to produce all responsive emails by Monday, November 19, 2012.  In opposition to plaintiffs' last motion to compel, Chase supplied a detailed declaration making it clear that the production of emails would be burdensome and time-consuming.  (*See* ECF No. 143 ¶¶ 7-9; *see also* ECF No. 137 at 32-34.)  While the Court ordered Chase to produce emails, it declined to order that they be produced by a certain date.  (*See* ECF No. 149 at 4.)

Chase's current email production timeline is reasonable.  Chase expects to complete email collection by November 30, and production by January 15, 2013, one month before plaintiffs' class certification motion.  Chase could not even begin the collection process before September 24, 2012, when plaintiffs first provided Chase with a list of custodian names. (Dresser Decl. Ex. 11 at 4.)[14]  Had plaintiffs identified the custodians months ago, as Chase requested, the collection process would be further along.  (*See id.* Ex. 8.)  At present, there are several impediments to moving the collection process any faster.  (*See* Varzally Decl. ¶ 3.)  The time period demanded (2008 to present) is lengthy, and, as a result, substantially increases the volume of documents to be collected.  (*Id.*)  The emails from all ten custodians, across all five years requested, amount to approximately 116 gigabytes of data, which is equal to approximately

---

[13] With respect to the fifth factor, "[s]hould the government be forced to produce these documents, it is probable that future government employees may be reluctant to capture the full breadth of their opinions and thoughts in written format for fear of future disclosure."  *See In re Bank One*, 209 F.R.D. at 428.  Plaintiffs fail to meet their burden of showing how "the government's interest [does not] outweigh[] the public's interests in disclosure."  *See id*.

[14] Plaintiffs mischaracterize the parties' meet and confer regarding search terms.  As the discussion is not relevant to the motion at hand, Chase will not burden the Court with a response.

*11 million pages* of emails.  (*See* Dresser Decl. ¶ 12.)  Moreover, as these custodians are not all heritage Chase employees, the collection process requires extracting archived materials from different heritage organizations, which requires additional resources and time.  (Varzaly Decl. ¶ 3.)  Once the documents are collected, it will then take time to run search terms across them, and upload them to the database on which they will be reviewed.  (*Id*.)

Complete collection and production as scheduled does not prejudice plaintiffs.  The only need they articulate for immediate production is that the emails are "important" to their class certification brief because the emails may relate to "company-wide practices at Chase, especially in relation to the claims stated in Part 2 of the Complaint."  (MPA at 19.)  Chase has already produced policies, procedures, scripts, and training materials that state Chase's "company-wide practices."  To the extent plaintiffs suggest that practices of individual employees identified in emails can be extrapolated to all Chase employees, the Supreme Court expressly disapproved such an approach.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011).[15]  Nor have plaintiffs articulated any way in which production of the emails a month ahead of their class certification motion will prejudice them.  Plaintiffs' motion for an earlier production deadline should therefore be denied.

## CONCLUSION

For the foregoing reasons, Chase respectfully requests that plaintiffs' motion to compel additional depositions and document production be denied.

---

[15] Plaintiffs also argue that the emails may provide "context for understanding how . . . audits and reports were used and understood among Chase employees."  (MPA at 19.)  Individual Chase employees' understanding of audit reports similarly has no relevance to class certification.

Dated:  November 16, 2012                    On behalf of defendants,


                                            */s/  Michael J. Agoglia*
                                            Michael J. Agoglia (CA SBN 154810)
                                            MORRISON & FOERSTER LLP
                                            425 Market Street
                                            San Francisco, California 94105-2482
                                            Telephone:  (415) 268-7000
                                            Facsimile:  (415) 268-7522
                                            magoglia@mofo.com

                                            Donn A. Randall (BBO No. 631590)
                                            Matthew A. Kane (BBO No. 666981)
                                            BULKLEY, RICHARDSON AND GELINAS, LLP
                                            125 High Street
                                            Oliver Street Tower, 16th Floor
                                            Boston, Massachusetts 02110
                                            Telephone:  (617) 368-2520
                                            Facsimile:  (617) 368-2525
                                            drandall@bulkley.com
                                            mkane@bulkley.com

# APPENDIX A

## DEPOSITIONS PLAINTIFFS HAVE TAKEN

**I.      RULE 30(b)(6) DEPOSITIONS**

| 30(b)6) Topic Summary | Deposition |
|---|---|
| 1. | HAMP participation and implementation | Chase produced a witness. |
| 2. | Operation and administration of loan modification, repayment, and forbearance programs | Chase produced 2 witnesses. |
| 3. | Determining eligibility for HAMP, repayment, , and forbearance programs | Chase produced a witness. |
| 4. | Communicating with borrowers about their applications and eligibility | Chase produced 3 witnesses. |
| 5. | NPV Test and "any other formulae, processes or calculations used to determine Borrowers' eligibility" | Chase produced a witness. |
| 6. | "Waterfall" and "any other formulae, processes or calculations used to determine  the payment amount and terms of Modification" | Chase produced a witness. |
| 7. | "Any other formulae, processes or calculations used for determining new principal balance, deferred principal, interest rates or other loan terms" | Chase produced a witness. |
| 8. | Investor, GSE, or government agency requirements and limitations | Chase produced a witness. |
| 9. | Soliciting investor, GSE, or government agency approval of modifications | Chase produced a witness. |
| 10. | Investor, GSE, or government agency communications | Chase produced a witness. |
| 11. | Vendors associated with modification, forbearance, and repayment programs | Chase produced 3 witnesses. |
| 12. | Fees and charges | Chase produced a witness. |
| 13. | Credit reporting | Chase produced a witness. |
| 14. | Escrow and suspense accounts | Chase produced a witness. |
| 15. | Supervising employees | The parties agreed to cover in connection with the other areas of testimony. |

# APPENDIX A

## DEPOSITIONS PLAINTIFFS HAVE TAKEN

| | 30(b)6) Topic Summary | Deposition |
|---|---|---|
| 18 | Identity of individuals implementing modification programs | The parties agreed to cover in connection with the other areas of testimony. |
| 17, 18. | Chase's Compliance with HAMP | Chase objected to the present request in April 2012 because Cathy Fetner testified on this topic in 2011. |
| 19. | Forms of communications with borrowers who applied a modification | Chase produced 3 witnesses. |
| 20. | All of the 46 Named Plaintiffs' records | Chase objected in April 2012 because it is not possible to produce a 30(b)(6) witness on this topic. |
| 21. | Treasury reporting regarding modifications. | Chase produced 2 witnesses. |
| 22. | Chase's electronic systems | Chase produced 2 witnesses. |
| 23, 25. | Complaints regarding modification programs and investigating those complaints | Chase produced a witness. |
| 24. | "Your analysis of the costs and benefits to you" of modifications, repayment, and forbearance agreements and foreclosures | Chase objected in April 2012. Plaintiffs have not moved to compel. |
| 26. | The "accuracy" of TPPs and permanent modifications | Chase produced 2 witnesses. |
| 27. | Forms or standard documents relating to modifications | Chase produced 2 witnesses. |
| n/a | October 2, 2012 additional notice regarding the FDCPA | Chase objected because a second 30(b)(6) notice is improper under Rule 30(a)(2)(B). |

**APPENDIX A**

**DEPOSITIONS PLAINTIFFS HAVE TAKEN**

**II.    PERCIPIENT WITNESS DEPOSITIONS**

| | Percipient Witness | Deposition Topics Included: |
|---|---|---|
| 1. | Keith Thompson | Customer communications<br>Systems and tools for storing, processing, and evaluating modification-related information |
| 2. | Vickie Brown-Wilson | Customer communications<br>Systems and tools for storing, processing, and evaluating modification-related information |
| 3. | Chris Stump | Systems and tools for storing, processing, and evaluating modification-related information |
| 4. | Neal Cebulskie | Evaluation of customer requests for loan workouts |
| 5. | Karen Shine | Declaration in support of opposition to *Durmic* preliminary injunction<br>Systems and tools for storing, processing, and evaluating modification-related information |
| 6. | Janet Moynihan | Former call center employee |
| 7. | Erika Penaloza | Former call center employee |

**CERTIFICATE OF SERVICE**

I, Michael J. Agoglia, hereby certify that true copies of the foregoing document and accompanying supporting documents were served upon all counsel of record via this Court's CM/ECF system.  There are no non-CM/ECF parties.

/s/  Michael J. Agoglia
7Michael J. Agoglia