# Exhibit 5

**MORRISON** | **FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

June 5, 2012

Writer's Direct Contact
RLin@mofo.com
415.268.7466

Via Email

Gretchen Obrist, Esq.
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
gobrist@kellerrohrback.com

Re:     *In re JPMorgan Chase Loan Modification Litigation*, MDL No. 2290

Dear Gretchen:

I write to respond to your letter of May 29, 2012, regarding the topics listed in plaintiffs'
notice of 30(b)(6) deposition.

**Re-deposing Chase on Topics on Which Testimony Was Already Provided in *Durmic***

As you know, Chase already provided 30(b)(6) deposition testimony on a number of topics
in *Durmic*. Pursuant to the Court's November 28, 2011 Order (ECF No. 22), "the parties
will not be permitted to re-depose a . . . party previously deposed in connection with any of
the MDL cases, except to the extent that the witness or party was produced for a limited
purpose or on a limited basis, as previously agreed to by the parties."

The only limitations placed on Chase's 30(b)(6) deposition testimony, provided by Catherine
Fetner on March 30, 2011, were that she would not be qualified to speak as to Topic Nos. 11,
12, 15, and 16. (Trans. at 9-11.) As to all of the other topics of testimony requested, Chase
agreed to let plaintiffs' counsel ask whatever questions desired. Chase noted that some areas
of testimony were quite broadly worded, but that "we expect, depending on the questions,
she will also be able to provide 30(b)(6) deposition testimony" regarding those topics.
(Trans. 10-11.) Plaintiffs then proceeded to question Ms. Fetner, and following the
deposition, were free to meet and confer with Chase later if plaintiffs believed Ms. Fetner's
testimony to be insufficient in any way. Fact discovery closed in *Durmic* on August 1, 2011.
At no point did plaintiffs seek to meet and confer regarding any purported inadequacy in Ms.

sf-3143432

**MORRISON** | **FOERSTER**

Gretchen Obrist
June 5, 2012
Page 2

Fetner's testimony or seek to compel further deposition testimony on those topics.[1]  That
deposition therefore closed.

As such, the complaints in your letter that the deposition went six hours instead of seven, that
Ms. Fetner was insufficiently knowledgeable, and that plaintiffs had not fully digested
documents produced to them the week prior to the deposition or there were other document
production "deficiencies,"[2] are not pertinent.  That deposition has closed, and Chase may not
be re-deposed on the same topics.

Your letter also observes that Ms. Fetner's testimony focused on HAMP.  That is precisely
why, as outlined below and in its response to the 30(b)(6) deposition notice, Chase has
offered to provide testimony regarding non-HAMP modifications in addition to the
testimony that Ms. Fetner already provided regarding HAMP modifications.

You assert that the "time period" covered in the *Durmic* 30(b)(6) deposition began later than
the January 1, 2008 date sought here.  The *Durmic* notice listed the relevant time period as
beginning in January 1, 2009.  As you know, HAMP was announced in February 2009.
Accordingly, Ms. Fetner's testimony goes back to the inception of HAMP.  To the extent you
seek information about non-HAMP modifications, Chase has offered to provide testimony on
those issues, as outlined below.

You also suggest that Chase needs to update its testimony regarding HAMP to cover
practices between the time of Ms. Fetner's deposition and the present.  By that logic, no
witness would ever be safe from re-deposition because one could always ask to bring the
person back to "update" their testimony, thereby eviscerating the Court's direction that
parties not be re-deposed multiple times.  That cannot be, and is not, what the Court's
November 28 Order provides.

---

[1] Later, on September 2, 2011, the parties agreed to stay the litigation pending the determination by the Judicial
Panel on Multi-District Litigation regarding consolidation of these cases.  That stipulation provided that "the
parties to this litigation intend to preserve all positions and arguments in connection with the current status of
the litigation schedule in this matter including, without limitation, discovery deadlines."

[2] Your letter does not accurately characterize the deposition testimony regarding those purported deficiencies.
On page 226, you quote *counsel*'s statement, without any testimony from the deponent, regarding his
"speculation" about a potential deficiency and the possibility that he might make a "subsequent follow-up
request" regarding that issue, which he never made.  On page 179, you simply cite testimony that a matrix
existed that changed over time.  There is no indication that Chase somehow failed to fulfill its discovery
obligations regarding that matrix.

**MORRISON** | **FOERSTER**

Gretchen Obrist
June 5, 2012
Page 3

### Area of Inquiry Nos. 1 and 2: HAMP implementation and administration

> *Area of Inquiry No. 1:  Your policies, practices and procedures Related to Your participation in and implementation of HAMP.*

> *Area of Inquiry No. 2:  Your policies, practices and procedures Related to Your operation and administration of HAMP and/or Modification Programs, including, without limitation, Your policies, practices and procedures Related to Your processing, handling, and storage of applications, payments, forms, Documents, and Correspondence from Borrowers Related to HAMP and/or other Modification Programs.*

Ms. Fetner was expressly designated to testify on these very topics in *Durmic* as to HAMP (Durmic Topic No. 1: "Your policies, practices, and procedures related to HAMP").

You assert that she was insufficiently knowledgeable about Chase's written and verbal communications with borrowers regarding their applications for HAMP modifications.  The time to challenge the adequacy of her testimony has long since passed.  In any event, Chase has already agreed to provide a witness to testify regarding communications with borrowers concerning both HAMP and non-HAMP trial plans, as outlined below (Area of Inquiry Nos. 4, 19, and 27).  As such, this would seem to be a moot issue.

### Area of Inquiry Nos. 3, 5-7: Determining eligibility for modifications

> *Area of Inquiry No. 3:  Your policies, practices and procedures Related to determining eligibility for HAMP and/or other Modification Programs.*

> *Area of Inquiry No. 5:  The Net Present Value ("NPV") Test and/or any other formula(e), processes(es) or calculation(s) used to determine Borrowers' eligibility for HAMP and/or other Modification Programs.*

> *Area of Inquiry No. 6:  The "Waterfall" and/or any other formula(e), process(es) or calculation(s) used to determine the payment amount and terms of Modification offered to Borrowers.*

> *Area of Inquiry No. 7:  Any other formula(e), process(es) or calculation(s) used for determining new principal balance, deferred principal, interest rates or other loan terms Related to temporary and permanent modifications under HAMP and/or other modification Programs.*

**MORRISON** | **FOERSTER**

Gretchen Obrist
June 5, 2012
Page 4

Ms. Fetner was expressly designated to testify as to Chase's "policies, practices, and procedures related to determining eligibility for HAMP," as well as the "NPV Test," "Waterfall," and other "formulas, processes, or calculations." (Durmic Topic Nos. 2, 4-5.) Though you asserted in the May 17 call that she was "inadequate" to testify on those issues, your letter identifies nothing deficient in her testimony on those points. Accordingly, Chase has offered to provide testimony only on these topics as to non-HAMP modifications.

Your letter asserts that you wish to question Chase about the "intersection" between HAMP and non-HAMP modifications. We are not sure what you mean by that. To the extent you are referring to the order in which borrowers are considered for HAMP versus non-HAMP modification options, those questions could just as easily have been asked of Ms. Fetner when she was testifying about HAMP eligibility determinations. We do not see how that permits you to re-depose Chase regarding HAMP eligibility issues.

**Area of Inquiry Nos. 8-10: Investor restrictions and approval of modifications**

> *Area of Inquiry No. 8: The requirements and limitations, if any, imposed by Your contracts with investors, Government-Sponsored Enterprises (GSEs), the Federal Housing Administration and/or the U.S. Department of Veterans Affairs, or any agents, agencies, or departments of the aforementioned entities, Related to modifying Borrowers' mortgages.*

> *Area of Inquiry No. 9: Your policies, practices and procedures Related to soliciting or confirming third-party approval of Modifications including, without limitation, approval by, investors, Government-Sponsored Enterprises (GSEs), the Federal Housing Administration and/or the U.S. Department of Veterans Affairs, or any agents, agencies, or departments of the aforementioned entitites.*

> *Area of Inquiry No. 10: Your policies, practices and procedures for communicating with third-parties concerning your Modification Programs including, without limitation, communications with, investors, the United States Department of the Treasury, the Office of the Comptroller of the Currency, state Attorneys General, regulators, Government-Sponsored Enterprises (GSEs), the Federal Housing Administration and/or the U.S. Department of Veterans Affairs, or any agents, agencies, or departments of the aforementioned entities as well as the substance of those communications.*

Plaintiffs in *Durmic* already had ample opportunity to question Ms. Fetner about the "requirements and limitations, if any, imposed by Your contracts with investors relating to modifying Borrowers' mortgages" and "your policies, practices, and procedures related to soliciting or confirming investor approval of HAMP modifications." (Durmic Topic Nos. 6

MORRISON | FOERSTER

Gretchen Obrist
June 5, 2012
Page 5

and 7.)  Those were topics on which Chase stated that it "expect[ed]" she would be able to testify and on which she responsively answered questions.  Though you complain that her testimony was "scant" on that topic, you note repeated instances in which she was asked about those issues and identify no situation in which she failed to answer responsively.  It may be that plaintiffs now wish that they had chosen to ask more questions on that topic at that deposition.  But that is not Chase's fault, and is not a basis for re-deposing Chase on those issues.

Your letter asserts that the *Durmic* topics were limited to "investors" and therefore did not cover loans owned by government agencies or Government-Sponsored Entities ("GSEs") such as Fannie or Freddie.  We are mystified by the distinction that you are attempting to draw.  An "investor" is a third party that owns the underlying loan serviced by Chase, whether that party be a private party or a public entity.  As such, loans owned by government agencies or GSEs would have already been covered.

### Area of Inquiry Nos. 4, 19, and 27: Forms of communications with borrowers who have applied for or received a modification

> *Area of Inquiry No. 4:  Your policies, practices and procedures Related to Communicating with Borrowers about their applications and eligibility for HAMP and/or other Modification Programs.*
>
> *Area of Inquiry No. 19:  All forms of Communication with Plaintiffs and Borrowers who have applied for or received a Modification.*
>
> *Area of Inquiry No. 27:  All forms and/or other standardized Documents You use that Relate to HAMP and/or other Modification Programs.*

These areas of inquiry are hopelessly overbroad.  Borrowers who have applied for modification or received them can receive any one of thousands of form letters that have existed in a multitude of different versions, many of which have nothing to do with the modification process, such as bounced check notices.  Moreover, as you can see from our document production, there are innumerable scripts and procedures (and historical versions of those documents) for interacting with borrowers who are in the modification process or have completed it, most of which have nothing to do with enrollment in trial period plans or the length of the modification application process.  It is impossible to come up with a witness or series of witnesses who could testify as to all of that information.

Chase is willing to produce a witness or witnesses to provide general testimony regarding what form documents and scripts were used to solicit and enroll borrowers in trial period plans.  We are unaware of any form documents or scripts regarding the estimated length of

MORRISON | FOERSTER

Gretchen Obrist
June 5, 2012
Page 6

the modification process, but if you wish to identify any that you believe to be pertinent in
that respect, we stand willing to discuss providing testimony on that point as well.

Beyond that, unless you are willing to focus your inquiry, we are at a loss as to how to
provide what you seek.

**Area of Inquiry No. 11: Your policies, practices and procedures for hiring, supervising,
training, managing, auditing, and/or terminating vendors who perform functions for
you associated with Modification Programs.**

This topic remains hopelessly overbroad. As I explained on our May 17 call, this topic could
cover virtually any situation in which Chase has purchased a good or service from a third
party, such as its telephone systems, computers, Outlook email servers, fax machines, or the
like. Much of that is entirely irrelevant to plaintiffs' claims. On our May 17 call, plaintiffs
repeatedly emphasized that they would not limit this topic in any fashion. Plaintiffs stated as
"examples" that they were principally interested in document processing vendors handling
borrower submissions, and any outside vendors who directly spoke with borrowers, as well
as "everything" about how Chase evaluated vendor performance. However, plaintiffs stated
that these were just examples, and categorically refused to narrow the topic.

We have given some thought to this issue. If you are unwilling to narrow your request, there
is no practical way for Chase to provide what you need. Each vendor relationship has a
different contract, hiring history, assigned team members, and evaluation process. To
produce a witness to testify on each of those innumerable relationships would be a
gargantuan and impossible task, and would have limited or no relevance to plaintiffs' claims
in many instances.

**Area of Inquiry No. 12: Your policies, practices and procedures Related to imposing
fees and charges on borrowers' accounts after they have applied for and/or been
approved for Modifications and/or after they have entered into Modifications.**

On our May 17 call, plaintiffs clarified that this topic seeks testimony on how fees and
expenses are charged to borrowers' accounts as a result of being in the modification process,
and how that differs from how fees and expenses are otherwise charged to borrowers under
general servicing procedures. Subject to the objections stated in its responses, Chase is
willing to provide general testimony on the topic as clarified.

**MORRISON** | **FOERSTER**

Gretchen Obrist
June 5, 2012
Page 7

**Area of Inquiry No. 13: Your policies, practices and procedures for credit reporting associated with the Accounts of Borrowers who have applied for and/or received Modifications.**

As promised on the May 17 call, we have given some more thought to this topic. Subject to the objections stated in its responses, Chase is willing to provide general testimony on the policies, practices, and procedures for credit reporting on the accounts of borrowers who have applied for or received modifications.

**Area of Inquiry No. 14: Your policies, practices and procedures Related to the establishment and management of Borrower escrow and suspense accounts Related to HAMP and/or other Modification Programs.**

On our May 17 call, plaintiffs clarified that this topic seeks testimony on how borrowers' payments are credited to escrow and suspense accounts when in the modification process, and how that differs from how such practices operate under general servicing procedures. Subject to the objections stated in its responses, Chase is willing to provide general testimony on the topic as clarified.

**Area of Inquiry Nos. 15 and 16: Managing, supervising, monitoring, training, and identities of all personnel "involved in" or "related to" modification programs**

> *Area of Inquiry No. 15: Your policies, practices and procedures Related to managing, supervising, monitoring, and training Your Employees involved in HAMP and/or other Modification Programs.*

> *Area of Inquiry No. 16: The identity, title, and department of each individual who is responsible for implementing Your policies, practices, and procedures Related to HAMP· and/or other Modification Programs.*

These topics are again hopelessly overbroad. It is impossible to come up with a witness or manageable set of witnesses to speak as to every person involved in implementing anything related to modification, and all of the various trainings, monitoring, and supervision applicable across all of those areas. Chase is already providing extensive organizational charts, and has also provided the training and monitoring materials at issue.

We think that the most practical solution is for witnesses who are already testifying regarding Chase's substantive policies, practices, and procedures regarding other topics in plaintiffs' 30(b)(6) notice (*e.g.*, credit reporting, assessment of borrower eligibility for modification, etc.) to provide general testimony regarding how employees are managed, supervised,

**MORRISON | FOERSTER**

Gretchen Obrist
June 5, 2012
Page 8

monitored, and trained in those areas, and who the key management personnel overseeing those areas have been.

If you think that this does not cover what plaintiffs need, please explain what you think would be missing, and why.

**Area of Inquiry No. 17: Your policies, practices and procedures for assuring compliance with HAMP, including, without limitation, internal, governmental and third-party audits of your compliance with HAMP and/or other Modification Programs.**

We are puzzled by your assertion that "this area of inquiry was not at issue in *Durmic*." Chase has already been deposed on this precise topic in *Durmic*. (Durmic Topic No. 10 ("Your policies, practices, and procedures for assuring compliance with HAMP, including without limitation, audits of your compliance with HAMP").) Chase stated that it expected Ms. Fetner could provide testimony on that topic. (Trans. 10-11.) Your letter does not identify any purported deficiency in her testimony in response to questions on those issues.

**Area of Inquiry No. 18: Any and all reports, studies, internal or external audits and/or other types of evaluations You conduct Related to Your compliance with HAMP and/or other Modification Programs.**

This topic is hopelessly overbroad. As written, it covers every evaluation or report ever done of any modification-related work that Chase does. For example, it would cover a low-level call center manager's notes on pointers that she planned to give her six-person team. There is no practicable way for any person or set of persons to be able to speak to these issues when framed this broadly.

We also do not understand what you mean by "compliance with HAMP and/or other Modification programs." Do you mean whether Chase is accurately determining whether borrowers are eligible for permanent modifications under the Treasury guidelines, or under the governing investor restrictions? Or do you have some broader, more sweeping view of what "compliance" with those programs entails? If the latter, what is that understanding, and how is that information relevant to this action?

Moreover, you do not explain what information you seek about these reports, studies, audits, or evaluations. Are you seeking to understand what processes are in place for conducting routine audits, and how the process is conducted on a step-by-step basis? Or are you looking for witnesses to be able to speak as to the content of each separate audit and the particular investigation and conclusions in each of those audits? If the latter, it is impracticable for any witness or set of witnesses to be prepared to speak as to the content of every single audit that

MORRISON | FOERSTER

Gretchen Obrist
June 5, 2012
Page 9

has ever been conducted.  Do you intend to identify for us which particular audits you wish
to have witnesses speak about?

**Area of Inquiry No. 20: Plaintiffs' Modifications, Accounts, and Account Records.**

You do not explain what particular information you are looking for concerning the named
plaintiffs' modifications, accounts, and account records.  As you can see from the volume of
procedures that Chase has produced, many different processes can apply to any given
borrower's loan modification request and the servicing of his or her account.  For example, if
you wanted to know why a particular fee was charged to a particular named plaintiff's
account, the person who would be able to answer that question would likely be very different
from the person who would be able to tell you what software tool was used to determine that
a particular named plaintiff was ineligible for a modification under Fannie guidelines.  There
is no way to prepare a witness or set of witnesses to testify off the top of their heads as to
every conceivable question that could arise regarding each of the thirty-two loans in this
case.

As always, we stand willing to discuss practical solutions to get you the information that you
need if you can specify it more precisely.  For example, if there are particular codes that you
need help deciphering that appear in particular account records, we are open to discussing a
sensible method for providing you that information, perhaps by written questions.  But,
without some guidance or narrowing from you, we cannot think of a way to provide
testimony on this topic as written.

**Area of Inquiry No. 21: Your policies, practices, procedures and systems used to report
about Borrowers to the federal Department of the Treasury or other governmental
agencies in connection with Borrower's applications for Modifications under HAMP
and/or other Modification Programs.**

Subject to its objections as stated in its responses to the 30(b)(6) notice, Chase is willing to
provide a witness or witnesses to provide general testimony regarding the processes by
which IR2 loan-level data and periodic aggregate reports are provided to Treasury regarding
modifications.

To the extent that this topic seeks various other "reports" to "other governmental agencies,"
such a demand encompasses a broad range of Chase's interactions with numerous potential
entities on a variety of topics, many of which have nothing to do with this case.  For
example, Chase may provide information to regulators regarding fair lending issues, which
could touch on modification.  If you are looking for something beyond an explanation of the
processes for sending the loan-level and aggregate data to Treasury regarding HAMP, please
explain what you are seeking, and why you think it is relevant.

sf-3143432

MORRISON | FOERSTER

Gretchen Obrist
June 5, 2012
Page 10

**Area of Inquiry No. 22: All electronic system(s) You use that Relate to HAMP and/or other Modification Programs, including, without limitation, electronic storage of data, Communications and Documents Related to Modifications and Modification applications.**

We are puzzled by your assertion that "this area of inquiry was not at issue in *Durmic*." Chase has already been deposed on this precise topic in *Durmic*. (Durmic Topic No. 13 ("All electronic system(s) You use that Relate to HAMP").) Chase stated that it expected Ms. Fetner could provide testimony on that topic (Trans. 10-11), and she proceeded to do so. She testified extensively on the numerous different types of software used to assess borrower eligibility for modifications. She also testified regarding numerous systems used to store and track information regarding modification applications.

Your letter lists some systems that Ms. Fetner did not specifically recognize. You do not explain, however, why those systems are even remotely relevant to this case. For example, why is the "Lucent Phone System" pertinent? Indeed, plaintiffs in *Durmic* never asserted that Ms. Fetner's testimony regarding those systems rendered her inadequate as a 30(b)(6) witness on Topic No. 13.

We further note that this topic is hopelessly overbroad, covering many areas that have nothing to do with this case. Electronic systems are used in innumerable aspects of Chase's operations, from emails to telephone systems to payment processing systems to website management that affect modifications. It is impracticable for Chase to come up with a witness or set of witnesses to testify as to every electronic system that conceivably relates to the modification process. We therefore request that you explain more precisely what you are actually seeking to discover, so that the topic can be narrowed to target the information necessary to your case.

**Area of Inquiry Nos. 23 and 25: Borrower complaints**

> *Area of Inquiry No. 23: Your policies, practices and procedures for investigating and/or reviewing Borrowers' inquiries and/or complaints concerning HAMP and/or other Modification Programs.*

> *Area of Inquiry No. 25: Complaints, whether formal or informal, made concerning your conduct in connection with HAMP, and/or other Modification Programs.*

There is no practicable way to designate a witness or witnesses who can testify as to how Chase handled every borrower complaint that arose "in connection with" modifications. As we have previously discussed in the context of plaintiffs' requests for production of documents, identifying each complaint that is modification-related would require an

**MORRISON** | **FOERSTER**

Gretchen Obrist
June 5, 2012
Page 11

extremely labor-intensive manual review process, and investigating all the communications with the borrower regarding each such complaint and the resolution of that complaint would be a similarly gargantuan endeavor.

Chase is already providing copies of borrower complaints concerning HAMP that are kept in the ordinary course of business, as well as aggregate reports regarding the categories of complaints. Chase is also providing its current and historical policies and procedures for investigating borrower complaints concerning HAMP and other modification programs.

Please explain why these materials do not sufficiently address what plaintiffs need in order to understand the handling of the complaints that borrowers have made.

**Area of Inquiry No. 24: Your analysis of the costs and benefits to you of Modifications and foreclosure including, without limitation, financial costs and benefits associated with the choice between Modification and foreclosure.**

Through Ms. Fetner, Chase has already provided 30(b)(6) deposition testimony regarding the NPV analyses that it has employed to assess eligibility for HAMP modifications, which assess the relative cost and benefit of foreclosure versus modification as to each application for a HAMP permanent modification. Chase has also committed to provide plaintiffs with the same testimony regarding non-HAMP modifications.

We assume that this testimony addresses what you seek to cover in this area of inquiry. If not, please advise what else you intended to cover, and why it is relevant to the case.

**Area of Inquiry No. 26: Your policies, practices and procedures for ensuring the accuracy of the terms of Temporary Payment Agreements or Loan Modification Agreements under HAMP and/or other Modification Programs, including the accuracy of the information and data used to determine such terms, and for correcting any errors discovered in those terms, information or data.**

We do not understand what you are seeking to discover regarding the "accuracy of the terms" of modifications. Through Ms. Fetner, Chase has already provided 30(b)(6) deposition testimony regarding the "Waterfall" and how modification terms are generated in the HAMP context. Chase has also committed to provide plaintiffs with the same testimony regarding non-HAMP modifications.

The area of inquiry mentions "correcting . . . errors." If that is what you seek to discover, please explain what you mean by that. Are you asking about audits, which would seem to be covered in Area of Inquiry Nos. 17 and 18? Or are you asking about checks that are performed during the modification process? After a proposed permanent modification

**MORRISON** | **FOERSTER**

Gretchen Obrist
June 5, 2012
Page 12

agreement is sent to a borrower, Chase has certain checks that it performs once the borrower returns a signed copy.  For example, in some cases, if too much time has elapsed before a signed copy is returned, the passage of time can require changes to the terms of the proposed modification in order to satisfy HAMP guidelines or investor requirements.  Are you seeking testimony regarding what checks Chase performs after a borrower has returned a signed copy of a proposed permanent modification?

We look forward to your response on these issues.  As always, we stand willing to meet and confer further with you, as needed.

Sincerely,

Rita F. Lin

cc:    Gregory P. Dresser
       Eric Holland
       Gretchen Freeman Cappio