# Exhibit 6

LAW OFFICES OF

# KELLER ROHRBACK L.L.P.

LAURIE B. ASHTON ①③⓿❷❹❺
IAN S. BIRK ⓿
JAMES A. BLOOM ③❹
STEPHEN R. BOATWRIGHT ①⓿
KAREN E. BOXX ❹
GRETCHEN FREEMAN CAPPIO
ALISON CHASE②❹⓿
T. DAVID COPLEY ③
ALICIA M. CORBETT ①⓿
ROB J. CRICHTON ❹
CHLOETHIEL W. DEWEESE
MAUREEN M. FALECKI ❹
JULI FARRIS ④⓿
RAYMOND J. FARROW
ERIC J. FIERRO ❹⓿
GLEN P. GARRISON ⑧
LAURA R. GERBER
MATTHEW M. GEREND
DEIRDRE P. GLYNN LEVIN

GARY A. GOTTO ④⓿
BENJAMIN GOULD ④❹
GARY D. GREENWALD ④⓿❹
MARK A. GRIFFIN ③
AMY N.L. HANSON ❹
IRENE M. HECHT
SCOTT C. HENDERSON
HOLLY E. HINTERBERGER
MICHAEL G. HOWARD
SHARON T. HRITZ ②⓿
AMY E. HUGHES
DEAN N. KAWAMOTO ④⓿
RON KILGARD ③❹⓿⓿❺
SUSAN A. KIM ④⓿
SARAH H. KIMBERLY
DAVID J. KO
BENJAMIN J. LANTZ
CARI CAMPEN LAUFENBERG
ELIZABETH A. LELAND

TANA LIN ⑦③⓿
DEREK W. LOESER
RYAN MCDEVITT
GRETCHEN S. OBRIST
ROBERT S. OVER ⑧⓿
DAVID S. PREMINGER ⓿⓿
ERIN M. RILEY ❹
ISAAC RUIZ
DAVID J. RUSSELL
MARK D. SAMSON ⑧⓿⓿❹
LYNN LINCOLN SARKO ⓿❹
WILLIAM C. SMART
THOMAS A. STERKEN
KARIN B. SWOPE
HAVILA C. UNREIN ❹
MARGARET E. WETHERALD ❹
HARRY WILLIAMS, IV ❹
AMY WILLIAMS-DERRY
MICHAEL WOERNER

BENSON D. WONG
DIANA M. ZOTTMAN

① ADMITTED IN ARIZONA
② ADMITTED IN CALIFORNIA
③ ALSO ADMITTED IN ARIZONA
④ ALSO ADMITTED IN CALIFORNIA
⑤ ALSO ADMITTED IN COLORADO
⑥ ALSO ADMITTED IN IDAHO
⑦ ALSO ADMITTED IN ILLINOIS
⑧ ALSO ADMITTED IN MARYLAND
❹ ALSO ADMITTED IN MICHIGAN
❺ ALSO ADMITTED IN MONTANA
⓿ ADMITTED IN NEW YORK
❹ ALSO ADMITTED IN NEW YORK
❹ ALSO ADMITTED IN OREGON
⓿ ALSO ADMITTED IN OHIO
⓿ ALSO ADMITTED IN TEXAS
❹ ALSO ADMITTED IN WASHINGTON, D.C.
⓿ ALSO ADMITTED IN WISCONSIN
❹ NOT ADMITTED IN WASHINGTON
⓿ OF COUNSEL

June 8, 2012

**<u>VIA E-MAIL</u>**

Rita F. Lin
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

   Re:  *In re JPMorgan Chase Mortgage Modification Litigation*
      No. 1:11-md-02290 (D. Mass.)

Dear Rita:

   This is in response to your letter of June 5, 2012, regarding Plaintiffs' 30(b)(6) deposition notice to Defendant JPMorgan Chase Bank, N.A.

## 1.  General Deficiencies of *Durmic* 30(b)(6) Testimony

   Plaintiffs do not believe that Chase's refusal to produce a 30(b)(6) witness to testify in this MDL proceeding on all of the topics requested is in the spirit of Judge Stearns's Order regarding previously-deposed parties being re-produced for a deposition.  Cases from around the country were centralized into this MDL for a just and efficient resolution of their claims, and this includes conducting discovery necessary and relevant to *all* Plaintiffs' claims, not just those that were at issue in *Durmic*.

### a.  *Durmic* Discovery Posture

   Plaintiffs vehemently disagree with your assertion that we somehow failed to preserve our objections as to the insufficiency of Ms. Fetner's testimony for the purposes of satisfying the *Durmic* 30(b)(6) notice, or that the discovery deadlines in that case foreclose Plaintiffs' re-

■ KELLER ROHRBACK L.L.P.  1201 THIRD AVENUE, SUITE 3200, SEATTLE, WASHINGTON 98101-3052, TELEPHONE: (206) 623-1900, FAX: (206) 623-3384 ■
KELLER ROHRBACK L.L.P.  770 BROADWAY, 2ND FLOOR, NEW YORK, NEW YORK 10003, TELEPHONE: (646) 495-6198, FAX: (646) 495-6197
KELLER ROHRBACK L.L.P.  1129 STATE STREET, SUITE 8, SANTA BARBARA, CALIFORNIA 93101, TELEPHONE: (805) 456-1496, FAX: (805) 456-1497
KELLER ROHRBACK P.L.C.  3101 NORTH CENTRAL AVENUE, SUITE 1400, PHOENIX, ARIZONA 85012, TELEPHONE: (602) 248-0088, FAX: (602) 248-2822
WWW.KELLERROHRBACK.COM

Ms. Rita F. Lin                                          **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 2

deposition of her or another 30(b)(6) deponent now in this MDL.  First, this assertion is based on
your statement that "[f]act discovery closed in *Durmic* on August 1, 2011"—a statement that is
wholly unsupported by the record.[1]

     Second, as noted in my May 29 letter on these issues, Plaintiffs expressly stated their
objections as to the insufficiency of Ms. Fetner's testimony on the record at the close of the
deposition, as well as to Chase's conduct in dumping a large document production on Plaintiffs
two business days prior to the deposition. Fetner Tr. at 286:11-287:19.

     Third, even to the extent that Ms. Fetner's testimony was responsive to particular areas of
inquiry in the *Durmic* 30(b)(6) notice, the discovery process now underway relates to the broader
Consolidated Complaint in this MDL action and as such, Ms. Fetner's testimony is not sufficient.
Plaintiffs do not take the position that Ms. Fetner herself must necessarily be reproduced.
However, Chase's assertions that any topics in the MDL 30(b)(6) deposition notice are wholly
satisfied by Ms. Fetner's *Durmic* testimony and that her deposition was "closed" are flatly
wrong, for the reasons set forth in my May 29 letter as well as below. Further, Ms. Fetner was
deposed by the *Durmic* Plaintiffs *before* the various cases were consolidated and transferred into
the MDL. Non-*Durmic* Plaintiffs, therefore, did not have the opportunity to review Chase's
documents before Ms. Fetner's deposition, nor to ask questions at her deposition. Similarly,
documents now being produced for the first time in this MDL proceeding bear on MDL 30(b)(6)
topics but could not have been at issue in Ms. Fetner's deposition. For that deposition to be
closed on all topics is not reasonable or practical.

       **b.    Scope of MDL 30(b)(6) Notice**

     Notwithstanding our continuing disagreement with your assertion that Ms. Fetner
testified on all but *Durmic* areas of inquiry 11, 12, 15, and 16, Plaintiffs will agree to limit the
area(s) of inquiry under their current 30(b)(6) notice to topics that Ms. Fetner did not address in
her deposition fully and completely, and not to rehash areas that she adequately covered in the
*Durmic* deposition.

---

[1] While the original close of discovery in *Durmic* was set for May 3, 2011, the Court granted the parties' joint
motion to stay all case management deadlines on April 20, 2011, shortly after the *Durmic* Plaintiffs' first
mediation with Judge Infante. That stay took effect before the *Durmic* Plaintiffs were obligated to complete their
deposition of Chase's designee. Prior to the expiration of that stay, the Court ordered the parties to submit a status
report, in which the parties jointly requested a status conference. The need for this status conference was obviated
by the filing of the JPML petition on August 2, 2011 and the subsequent stay of *Durmic* pending consolidation.
*See, e.g.*, Order on Motion for Protective Order (Dkt. 81) (Aug. 5, 2011) (finding motion for protective order moot
"in light of the anticipated transfer of this case to multidistrict litigation"). Finally, on September 2, 2011, the
*Durmic* plaintiffs filed an assented-to motion to stay the *Durmic* action in light of the proceedings pending before
the JPML. In the motion, the parties stated that they "intend[ed] to preserve all positions and arguments in
connection with the current status of the litigation . . . including, without limitation, discovery deadlines."
Assented to Motion to Stay at 2, ¶ 8 (Dkt. 83). Judge Stearns granted this motion on September 4, 2011. No
reasonable interpretation of this history would lead to a conclusion that *Durmic* fact discovery "closed" on August
1, 2011.

Ms. Rita F. Lin                                    **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 3

To the extent that Ms. Fetner's testimony adequately covered HAMP-related topics that do not require any testimony prior to July 31, 2009, we are in agreement that the period from January 1, 2008 to July 31, 2009 requires no further testimony. However, Plaintiffs will seek testimony from January 1, 2008 to July 31, 2009 on topics that have not been sufficiently covered, as well as an update on Chase's practices from the time of Ms. Fetner's deposition to the present.

We also will pursue topics that Chase claims that *Durmic* counsel could have asked or pursued more thoroughly but did not. Because this MDL case is bigger than *Durmic*, fairness dictates that all parties should be entitled to due process in pursuing relevant discovery, even if there is some inconvenience to Chase. To be clear, our intent is not to obtain duplicative testimony. But we simply must be able to obtain complete testimony pertinent to the MDL, for the entire class periods, and on behalf of all Plaintiffs.

2.      **MDL Areas of Inquiry 1 and 2**

*Your policies, practices and procedures Related to Your participation in and implementation of HAMP.*

*Your policies, practices and procedures Related to Your operation and administration of HAMP and/or other Modification Programs, including, without limitation, Your policies, practices and procedures Related to Your processing, handling and storage of applications, payments, forms, Documents and Correspondence from Borrowers Related to HAMP and/or other Modification Programs.*

As described above, Plaintiffs reserve their rights to ask questions that were not or could not have been asked on these topics, as well as where Ms. Fetner's testimony was deficient, as described in my May 29 letter. Your agreement to produce a witness for areas of inquiry 4, 19, and 27 and assertion that this issue is "moot" suggest that you will allow questions responsive to areas of inquiry 1 and 2 to be asked of the witness designated on those other topics, in addition to your prior agreement to produce a witness on non-HAMP aspects of areas of inquiry 1 and 2. Please let us know if you disagree with that approach.

3.      **MDL Areas of Inquiry 3, 5, 6, and 7**

*Your policies, practices and procedures Related to determining eligibility for HAMP and/or other Modification Programs.*

*The Net Present Value ("NPV") Test and/or any other formula(e), process(es) or calculation(s) used to determine Borrowers' eligibility for HAMP and/or other Modification Programs.*

*The "Waterfall" and/or any other formula(e), process(es) or calculation(s) used to determine the payment amount and terms of Modifications offered to Borrowers.*

Ms. Rita F. Lin                                                    **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 4

*Any other formula(e), process(es) or calculation(s) used for determining new principal
balance, deferred principal, interest rates or other loan terms Related to temporary and
permanent modifications under HAMP and/or other Modification Programs.*

Plaintiffs' request for additional (and novel) testimony responsive to areas of inquiry 3, 5,
6, and 7 relates to the obvious relevance of the fluidity of Chase's process for determining an
applicant's eligibility for modification programs. As I stated in my May 29 letter, we fully
expect a witness to be provided who can testify on these areas of inquiry regarding HAMP and
non-HAMP programs, and, in particular, the interaction between and alternate use of HAMP and
non-HAMP calculations and considerations for the same borrowers. If you continue to refuse to
produce a witness on these topics, we are at an impasse.

**4.      MDL Areas of Inquiry 8, 9, and 10**

*The requirements and limitations, if any, imposed by Your contracts with investors,
Government-Sponsored Enterprises (GSEs), the Federal Housing Administration and/or
the U.S. Department of Veterans Affairs, or any agents, agencies or departments of the
aforementioned entities, Related to modifying Borrowers' mortgages.*

*Your policies, practices and procedures Related to soliciting or confirming third-party
approval of Modifications including, without limitation, approval by investors,
Government-Sponsored Enterprises (GSEs), the Federal Housing Administration and/or
the U.S. Department of Veterans Affairs, or any agents, agencies or departments of the
aforementioned entities.*

*Your policies, practices and procedures for communicating with third-parties concerning
your Modification Programs including, without limitation, communications with
investors, the United States Department of the Treasury, the Office of the Comptroller of
the Currency, state Attorneys General, regulators, Government-Sponsored Enterprises
(GSEs), the Federal Housing Administration and/or the U.S. Department of Veterans
Affairs, or any agents, agencies or departments of the aforementioned entities as well as
the substance of those communications.*

As described above, Plaintiffs reserve their rights to ask questions that were not or could
not have been asked on these topics, as well as where Ms. Fetner's testimony was deficient, as
described in my May 29 letter. In addition, we seek testimony related to the documents that you
will be producing in response to RFPs 36 and 37, as discussed on our June 7 meet and confer
call. If you require further clarification, please let us know. If you continue to refuse to produce
a witness on areas of inquiry 8, 9, and 10, we are at an impasse.

Ms. Rita F. Lin                                        **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 5

5.      **MDL Areas of Inquiry 4, 19, and 27**

*Your policies, practices and procedures Related to Communicating with Borrowers about their applications and eligibility for HAMP and/or other Modification Programs.*

*All forms of Communication with Plaintiffs and Borrowers who have applied for or received a Modification.*

*All forms and/or other standardized Documents You use that Relate to HAMP and/or other Modification Programs.*

Plaintiffs are willing to accept Chase's offer to produce a 30(b)(6) witness or witnesses to provide testimony regarding "what form documents and scripts were used to solicit and enroll borrowers in trial period plans." In an effort to further focus the testimony requested by areas of inquiry 4, 19, and 27, Plaintiffs request that this witness or witnesses also be able to testify about what Chase communicated to borrowers regarding the modification effective date, and Chase's views regarding the modification effective date and its relationship to the wrap-up of the modification process. Plaintiffs further request that this witness or witnesses be able to testify regarding unwritten trial payment plans (*i.e.*, verbal instructions to pay a modified amount in connection with the modification process), as well as instructions to skip payments or to become delinquent in order to be eligible for a modification. Another topic central to these areas of inquiry is the processes by which Chase managed, supervised, monitored, and evaluated incoming and outgoing communications with borrowers, including where practices failed to follow official policies and procedures (contained in the documents you are producing).

We are open to a further discussion on these areas of inquiry. Once we have reviewed your production of scripts and policies and procedure materials related to these areas of inquiry, we may have additional suggestions to focus these topics. In the mean time, we request that you identify witnesses who can testify on the foregoing issues so we can proceed with putting together a witness schedule.

6.      **MDL Area of Inquiry 11**

*Your policies, practices and procedures for hiring, supervising, training, managing, auditing and/or terminating vendors who perform functions for you associated with Modification Programs.*

Plaintiffs will limit the scope of area of inquiry 11 to match the scope of our request for documents responsive to RFPs 34 and 35. On our June 5 meet and confer call on those document requests, we focused our requests to include vendors processing incoming and outgoing documents and communications in the modification process, including faxes, mail, and call centers. It is appropriate to synchronize the 30(b)(6) topic accordingly. Thus, for example, we would want someone designated for area of inquiry 11 who can speak to the contractual

Ms. Rita F. Lin                                          **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 6

relationship, supervision, hiring, training, auditing, or termination of vendors such as Guardian
and/or Lenderlive.  We understand that you are investigating the scope and number of vendors
involved, and would make the same request regarding all vendors relevant to the forthcoming
document production.  We are happy to discuss this area of inquiry further and believe we have
already made substantial progress in this regard.

> 7.      **MDL Areas of Inquiry 12, 13, and 14**
>
> *Your policies, practices and procedures Related to imposing fees and charges on
> borrowers' accounts after they have applied for and/or been approved for Modifications
> and/or after they have entered into Modifications.*
>
> *Your policies, practices and procedures for credit reporting associated with the Accounts
> of Borrowers who have applied for and/or received Modifications.*
>
> *Your policies, practices and procedures Related to the establishment and management of
> Borrower escrow and suspense accounts Related to HAMP and/or other Modification
> Programs.*

Plaintiffs are pleased that Chase will be producing witnesses to testify on these topics.
We look forward to conferring with you as soon as possible regarding the date and time of the
deposition and the identit(ies) of the deponent(s) Chase will be producing for areas of inquiry 12,
13, and 14.

> 8.      **MDL Areas of Inquiry 15 and 16**
>
> *Your policies, practices and procedures Related to managing, supervising, monitoring
> and training Your Employees involved in HAMP and/or other Modification Programs.*
>
> *The identity, title and department of each individual who is responsible for implementing
> Your policies, practices and procedures related to HAMP and/or other Modification
> Programs.*

Plaintiffs are willing to accept Chase's proposal of including these deposition topics in
the examination of the witnesses that will be testifying regarding Chase's substantive policies,
practices and procedures regarding other topics in the deposition notice.  We look forward to
finalizing the dates, times and identities of these deponents with you as soon as possible.

> 9.      **MDL Area of Inquiry 17**
>
> *Your policies, practices and procedures for assuring compliance with HAMP, including,
> without limitation, internal, governmental and third-party audits of your compliance with
> HAMP and/or other Modification Programs.*

Ms. Rita F. Lin                                                    **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 7

As described above, Plaintiffs reserve their rights to ask questions that were not or could not have been asked of Ms. Fetner on these topics.  Moreover, we now have had numerous in-depth discussions of audit and evaluative materials that Chase is either producing or investigating.  We believe it is appropriate to synchronize this area of inquiry with that RFP discussion.  We are open to a further discussion of this topic and continue to believe that this is a highly relevant area of inquiry that requires exploration in the MDL proceedings, and we expect a witness to be produced.

    **10.**    **MDL Area of Inquiry 18**

*Any and all reports, studies, internal or external audits and/or other types of evaluations You conduct Related to Your compliance with HAMP and/or other Modification Programs.*

Plaintiffs disagree that this topic is hopelessly overbroad.  Moreover, as with area of inquiry 17, we have now discussed audits at length in our RFP meet and confer calls.  In addition, "audits" include internal and external reports and/or analytics on modification processing and compliance that are based on loan level account data, whether regular or ad hoc.  If Chase wishes to have Plaintiffs specify what particular audits will be covered in the deposition, Plaintiffs suggest that Chase provide Plaintiffs with a list of such audits, so that Plaintiffs are able to narrow their request, and/or identify by Bates number where these audits are located in Chase's production to date (or in future productions to the extent that the materials have yet to be produced).  We are willing to confer on this topic further to the extent you have additional questions, but we do expect a witness to be produced for this area of inquiry.

    **11.**    **MDL Area of Inquiry 20**

*Plaintiffs' Modifications, Accounts and Account records.*

Plaintiffs are willing to narrow this area of inquiry to decision-making about the Named Plaintiffs' Modifications.  We understand your objection and agree that policies and procedures questions are better addressed pursuant to the areas of inquiry covering those topics rather than with respect to Plaintiffs' fact patterns, or, alternatively, by written questions.  We are willing to further discuss this topic to refine it for you as needed.

    **12.**    **MDL Area of Inquiry 21**

*Your policies, practices, procedures and systems used to report about Borrowers to the federal Department of the Treasury or other governmental agencies in connection with Borrowers' applications for Modifications under HAMP and/or other Modification Programs.*

Plaintiffs are pleased that Chase will be producing a witness to testify on this topic as described in your letter.  We look forward to conferring with you as soon as possible regarding

Ms. Rita F. Lin                                                    **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 8

the date and time of the deposition and the identit(ies) of the deponent(s) Chase will be
producing for area of inquiry 21. To further clarify our request to the extent it exceeds the scope
of what you have already agreed to, and in response to your concerns, we suggest the following.
To the extent this topic intersects with our prior discussions of audit materials being produced
pursuant to RFPs 48, 65, and 74, we agree that "fair lending" issues are outside the scope and
would include issues that are raised in the audit materials already produced or that are
forthcoming. As we noted in our discussion of the audit-related RFPs on June 5, we request that
you identify topics you believe to be non-responsive to those requests as you encounter them, so
that we can confer if necessary. As you know, without concrete examples, it is difficult for us to
respond with an exhaustive list of topics that are either included or excluded.

13.     **MDL Area of Inquiry 22**

*All electronic system(s) You use that Relate to HAMP and/or other Modification
Programs, including, without limitation, electronic storage of data, Communications and
Documents Related to Modifications and Modification applications.*

As described above, Plaintiffs reserve their rights to ask questions that were not or could
not have been asked on this topic, as well as where Ms. Fetner's testimony was deficient, as
described in my May 29 letter. In addition to adequate testimony on the examples in my May 29
letter, we need testimony regarding the collection, storage, and loss of data related to the
modification process. Without knowing what all of Chase's systems are, it is very difficult for us
to identify the specific systems, outside of those already listed, that pertain to this area of inquiry.
We are willing to further discuss this topic to focus it in on a manageable swath of information,
but we do expect a witness to be produced on this topic.

14.     **MDL Areas of Inquiry 23 and 25**

*Your policies, practices and procedures for investigation and/or reviewing Borrowers'
inquiries and/or complaints concerning HAMP and/or other Modification Programs.*

*Complaints, whether formal or informal, made concerning your conduct in connection
with HAMP, and/or other Modification Programs.*

As an initial matter, and as we requested yesterday via email, Plaintiffs need to know
when the production of documents described in your letter pertaining to complaints will be
complete. Without seeing that full production, we cannot answer your question about whether
this satisfies our need for information on this topic. In any event, we fail to understand your
objection to producing a witness who can speak to these documents and the procedures related to
complaints. That documents are being produced does not obviate the need for Chase's testimony
on this important area of complaints. If you continue to refuse to produce a witness on these
topics, we are at an impasse.

Ms. Rita F. Lin                                          **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 9

### 15.    MDL Area of Inquiry 24

*Your analysis of the costs and benefits to you of Modifications and foreclosure including,*
*without limitation, financial costs and benefits associated with the choice between*
*Modification and foreclosure.*

Plaintiffs are pleased that you intend to produce a witness to cover the non-HAMP aspect
of this area of inquiry and look forward to conferring with you as soon as possible regarding the
date and time of the deposition and the identit(ies) of the deponent(s) Chase will be producing
for area of inquiry 24.

With regard to how you have narrowed the aspect of this topic on which you intend to
produce a witness, however, we are puzzled by your reliance on Ms. Fetner's testimony for the
very first time in your June 5 letter. Your written objections to our 30(b)(6) notice did not so
much as mention *Durmic* testimony as a basis for your refusal to produce a witness on this topic,
and in any event, this topic was nowhere at issue in the *Durmic* 30(b)(6) notice, so could not
have been covered in that deposition.

Your effort to pigeonhole this topic into "NPV"-related topics is meritless and
unreasonable. There are a host of cost-benefit analyses that Chase must do for both HAMP and
non-HAMP modification programs that have nothing to do with that narrow formula (or its non-
HAMP equivalents). As just one example, we seek information regarding how Chase
determined the cost or benefit of extending the temporary payment period for borrowers seeking
modifications beyond three months. And to the extent that this topic does intersect with the NPV
topic, as described above, Plaintiffs reserve their rights to ask questions that were not or could
not have been asked on this topic with regard to HAMP, as well as where Ms. Fetner's testimony
was deficient, as described in my May 29 letter.

If you continue to refuse to produce a witness on area of inquiry 24, we are at an impasse.

### 16.    MDL Area of Inquiry 26

*Your policies, practices and procedures for ensuring the accuracy of the terms of*
*Temporary Payment Agreements or Loan Modification Agreements under HAMP and/or*
*other Modification Programs, including the accuracy of the information and data used to*
*determine such terms, and for correcting any errors discovered in those terms,*
*information or data.*

Here again, we are puzzled by your reliance on Ms. Fetner's testimony for the very first
time in your June 5 letter. Your written objections to our 30(b)(6) notice did not so much as
mention *Durmic* testimony as a basis for your refusal to produce a witness on area of inquiry 26,
and in any event, this topic was nowhere at issue in the *Durmic* 30(b)(6) notice, so could not
have been covered in that deposition.

Ms. Rita F. Lin                                              **KELLER ROHRBACK L.L.P.**
June 8, 2012
Page 10

Your effort to pigeonhole this topic into "Waterfall"-related topics is meritless and unreasonable. There are a host of accuracy checks that Chase must do for both HAMP and non-HAMP modification programs that have nothing to do with that narrow formula (or its non-HAMP equivalents). And to the extent that this topic does intersect with the Waterfall topic, as described above, Plaintiffs reserve their rights to ask questions that were not or could not have been asked on this topic with regard to HAMP, as well as where Ms. Fetner's testimony was deficient, as described in my May 29 letter.

The examples in your letter are indeed topics of interest. We seek testimony regarding how errors are detected and corrected. If you intend that this issue will be covered by witnesses testifying on areas of inquiry 17 and 18, that is excellent news, but you have not yet agreed to produce a witness on those topics, so please clarify that agreement. We also require testimony regarding "checks" that are performed during the modification process. Your examples are helpful to focus this topic.

Finally, another way to determine additional issues that pertain to this topic is reference to our discussion of RFPs 73, 75, and 77 in our June 7 meet and confer call.

We are happy to further discuss the foregoing issues, but if you continue to refuse to produce a witness on area of inquiry 26, we are at an impasse.

Plaintiffs have narrowed the 30(b)(6) issues as much as we can by letter, and we suggest that we meet and confer regarding remaining areas of disagreement by telephone. We appreciate your willingness to continue to confer on these issues and look forward to resolving the remaining issues quickly. We also need to get a witness schedule in place for the topics on which we have reached agreement so that those depositions may proceed as soon as possible.

Please let me know some dates and times next **Tuesday, Wednesday, or Thursday (June 12, 13, or 14)** during which you are available to confer on 30(b)(6) issues and I will get back to you to confirm a time that works on our side.

Best regards,

*Gobrist/gfc*

Gretchen S. Obrist

GSO:nas
cc:     Gregory P. Dresser
        Eric Holland
        Gretchen Freeman Cappio