# Exhibit 13

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO, CALIFORNIA
94105-2406

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

September 26, 2012

Writer's Direct Contact
415.268.6557
AAmezcua@mofo.com

Via E-Mail

Gary Klein
Klein Kavanagh Costello, LLP
85 Merrimac Street, 4th Floor
Boston, MA 02114

Re:   *In re JPMorgan Chase Loan Modification Litigation*, MDL No. 2290

Dear Mr. Klein:

We write in response to your letter to Michael Agoglia, received by email on September 24, 2012,[1] addressing the Court's September 21 Order on plaintiffs' motion to compel. Your letter raises several categories of documents and data that you claim should be produced. We address each in turn.

### I.   Threshold Issues

There are two threshold issues:

1. Production Deadline

While acknowledging that the Court did not provide a deadline for any additional document production arising out of its September 21 Order, you state that plaintiffs "expect the additional document production no later than October 15, 2012[.]" (Ltr at 1.) You note exceptions to this "deadline," calling for an even earlier production of certain documents, such as emails from Catherine Fetner before October 3, 2012, and audit materials by October 8, 2012. (*Id.* at 1, 3, 4.)

As plaintiffs are aware, the fact discovery deadline is November 2, 2012. Chase is willing to meet and confer with plaintiffs to prioritize, where possible, the production of certain categories of documents, and will continue to produce documents on a rolling basis. We cannot, however, collect, review, redact, and produce all of these documents by October 15 (less than three weeks from today), nor can we agree to produce Catherine

---

[1] The letter is dated both September 17 and September 21, 2012. It was received by email on September 24, 2012.

MORRISON | FOERSTER

Gary Klein, Esq.
September 26, 2012
Page Two

Fetner's emails before October 3 (one week from today), or audit materials and a privilege log by October 8 (two weeks from today). Among other reasons, this is a function of plaintiffs having two days ago provided Chase with a proposal for 60 search phrases, all with numerous Boolean variations. The parties have not yet agreed upon the phrases to be searched, and to conduct those discussions, Chase is diligently assessing the likely impact of the proposed search terms, and accompanying time required to produce these materials. We expect to engage plaintiffs on the substance of their proposal shortly.

2. Meet and Confer

Plaintiffs propose to meet and confer on September 27, 2012 at 1 p.m. EDT. That time does not work for us, due to longstanding travel and out of office commitments. We can confer with you on Monday, October 1, 2012 any time after 1 p.m. PDT.

**II.    Specific Document Categories**

1. Plaintiffs' Data and Random Sample

Plaintiffs request both named plaintiff data and random class member data in Excel format. Providing this data in Excel would take additional time because of the number of fields at issue. Consistent with the Court's Order, we are investigating the most efficient "non-static usable format" in which we can provide the data (Order at 1), and will keep you informed of the delivery method selected.

Your letter states that plaintiffs "expect that Chase will produce data including, but not limited to, the Plaintiff data identified in the Shine testimony that is available in the InfoOne system. Shine Dep., 59:2-62:4. If there is data for the named Plaintiffs in other systems or outside the tables Ms. Shine has access to, [plaintiffs] expect to receive that data as well." (Ltr at 2.) In plaintiffs' reply in support of their motion to compel, plaintiffs represented to the Court both that they would be "satisfied" with querying only the 250 tables in InfoOne to which Karen Shine has access, and that plaintiffs "don't care" how the random sample is generated. (Reply at 6-7.) As a result, the data provided to plaintiffs will be from the 250 tables in InfoOne to which Ms. Shine has access, and Chase will determine the most efficient means of generating the random data samples. Chase agrees to provide plaintiffs with an explanation of that methodology.

Chase will redact all identifying information from the random sample data. Per plaintiffs' request, Chase will provide a unique identifier for each account.

sf-3199286

MORRISON | FOERSTER

Gary Klein, Esq.
September 26, 2012
Page Three

2. Shine Documents

Your letters states that "[t]here is an ongoing dispute between the parties about the spreadsheet redactions." (Ltr at 2.) As explained to you in correspondence from Wendy Garbers on August 31, and again on September 6, 2012, loan-level data has been redacted from Karen Shine's Excel report to protect the privacy interest of individual borrowers. On September 17, 2012, Ms. Garbers further explained by letter that the worksheets labeled "Pivot-MA (OLD)" and "Detail (OLD)" have been redacted because they are attorney work product. The redactions for privilege will be included on a forthcoming privilege log. Should plaintiffs want this information sooner, Chase can agree to provide a privilege log that logs only these documents.

3. Spreadsheets, Reports, and Audits

Plaintiffs make several assertions regarding spreadsheets, reports, and audits (together, "reports"), some of which require clarification. To the extent plaintiffs seek information about the types of reports Chase has already produced, we direct you to Chase's opposition to plaintiffs' motion to compel, which identified the types of reports produced to date. (*See* Opp. at 19.) You note that plaintiffs "expect to see status and milestone reports containing loan level data on loan modifications that are generated periodically, and that are used on day-to-day basis by Chase employees to evaluate loan modification processes that are in the work pipeline." (Ltr at 3.) It is unclear what plaintiffs are looking for here, and if you have a particular report in mind. Again, the opposition to plaintiffs' motion to compel notes that this information has been provided in reports already produced. (Opp. at 20.)

We are working with Karen Shine to retrieve the list of reports mentioned at her deposition, and to collect relevant reports listed therein. We understand, however, that the list contains only the title of such reports, and does not contain descriptive information. As represented to the Court, Chase will produce those reports only in their most aggregate form. (Opp. at 21 n.17.) That is, if a report is available both on a daily basis and a monthly basis, Chase will produce the report in its monthly form. We continue to assess the volume of such reports, and the steps required to retrieve them. Until we know that information, we cannot provide plaintiffs with timing for production. We will keep you informed once we understand both the volume and whether any of these reports are among archived materials that require additional time to restore and collect. To the extent these reports contain loan-level information, Chase will also require time to redact identifying borrower information.

4. Documents Provided to Government Agencies and Regulators

Chase has agreed to produce non-privileged final audit findings from government agencies regarding the speed or accuracy of Chase's process for evaluating borrowers for mortgage loan modifications and its communications to these borrowers regarding that

sf-3199286

MORRISON | FOERSTER

Gary Klein, Esq.
September 26, 2012
Page Four

process, as well as formal communications with government entities on the subject. (Order at 3.) The Court directed that Chase continue the ongoing, rolling production of such documents and a privilege log "without delay." (*Id.*) Chase will comply fully with the Court's Order, but does not expect that all such documents will be produced by October 8. Chase can agree to prioritize these documents for production.

Plaintiffs "expect an explanation of the types of audits and communications [Chase] believe[s] are covered" by Chase's commitment to produce these materials. (Ltr at 3.) It is not clear what more information plaintiffs require on this point, besides the description provided above.

5. Complaints

Like plaintiffs, Chase also "expects compliance with the Court's Order with respect to Complaints" (Ltr at 3), which denied plaintiffs' request for complaints as "overly broad and burdensome" (Order at 3). Noting that the Court said that it would "entertain a request for a reasonable sampling," plaintiffs now request "actual complaints in every fifth matter[.]" (Ltr at 3.) Only a hair less than plaintiffs' "alternative" request for a complaint in every fourth matter, in its motion to compel, plaintiffs' present request remains unreasonable. We can agree to assess the burden involved with searching across the complaint data for 100 loan numbers from the random class sample data, and providing any actual complaints from those files. Provided that search is feasible and not burdensome, Chase agrees to provide the initial complaint correspondence related to 100 loan numbers selected at random from the random class sample data.

sf-3199286

MORRISON | FOERSTER

Gary Klein, Esq.
September 26, 2012
Page Five

6. <u>Emails and Attachments to Email</u>

Finally, plaintiffs request emails and attachments from ten custodians, and propose 60 search phrases, with numerous Boolean variations, to be run across each custodian's emails and attachments. We are working diligently to assess: (1) the volume of emails and attachments from the 10 custodians; (2) the time it will take to collect, review, redact, and produce such documents; and (3) whether the proposed search phrases indeed narrow the universe of documents in any material respect. We agree to keep you informed about such information as soon as we obtain it. As discussed above, we cannot commit to producing custodian emails and attachments from Catherine Fetner before October 3 or for the remaining custodians by October 15.

We note at this juncture that several of the 60 search phrases do not appear at all to be "narrowly drawn to relate to loan modification, processing, implementation, or outcomes," as plaintiffs represented to the Court. (MTC at 35.) Proposed searches 56-60 (for example, "(stop or cease or halt or desist or terminate) w/2 pay*") are but a few examples of proposed searches which are overly broad. (*See also* proposed searches 22, 24, 29, 30, 33, 44, 48, and 51.)

Very truly yours,

*a. amezcua*

Alexandria A. Amezcua

sf-3199286