# Exhibit 18



**Klein Kavanagh Costello, LLP**

Gary Klein
85 Merrimac Street, 4th Fl.
Boston, MA 02114
p. 617.357.5031
f. 617.357.5030
klein@kkcllp.com
www.kkcllp.com

October 23, 2012

*By Electronic Mail*

Wendy M. Garbers, Esq.
Gregory Dresser, Esq.
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA 94105-2482

Re: *In re. JPMorgan Chase Mortgage Modification Litigation*
Case No. 11-md-2290-RGS, D. Mass

Dear Wendy and Greg:

We are writing to summarize the meet and confer telephone calls of October 17, 19 and 22, 2012 on open discovery issues (both documents and depositions) and to provide you with additional information about Plaintiffs' positions.

We accept Chase's proposal for extension of Plaintiffs' expert supplementation deadline contained in Wendy's letter of October 15, 2012 up to and including November 12, 2012 as well as the proposal for Chase's extension of its own expert deadline.

We ask that you similarly agree to extend the existing deadline for "Fact Discovery Regarding Named Plaintiffs Modification Transactions And Class Certification" through November 19, 2012. This modest extension will preserve the existing interval between the two deadlines. Further, in light of Chase's commitments to produce a substantial quantity of Court-ordered discovery at or near the existing November 2, 2012 deadline, slightly shifting the discovery deadlines in place will allow Plaintiffs an opportunity to review and analyze the discovery before the close of the deadline to determine if there are problems, glitches or deficiencies. In addition, the proposed extension would allow both parties to conduct the depositions, described below, that are now likely to be scheduled after the November 2 deadline.

Plaintiffs reserve the right to seek additional extensions of the deadlines if Chase does not comply with the various commitments it has made in the meet and confer process including, without limitation, those described more specifically below:

1. *Production of Data Sample and Named Plaintiff Data*

   a. *Timing of Production:* We understand Chase to have committed to provide the Plaintiffs' data and random selection data samples required by the MTC Order no later than November 2, 2012.

   b. *Redaction:* Chase will investigate substitution redaction (as opposed to replacement redaction) for customer account numbers that will apply across the data samples and any other production of loan level account data produced in reports or other formats and get back to us with a position about its feasibility by the end of the week. (By making this compromise proposal, Plaintiffs do not withdraw their current proposal for Chase to retain account numbers as unique identifiers or to substitute a different common unique identifier.) As stated during the October 19, 2012 meet and confer and in many previous written and oral communications, Plaintiffs believe the forms of redaction proposed by Chase are unnecessary and are interposed to undermine Plaintiffs' use of the data production, both by eliminating the functionality of spreadsheets produced and by preventing Plaintiffs and their experts from using data traceable to a single account across data sources produced.

   c. *Information about field names and field codes:* Plaintiffs have requested a witness who can answer questions about data codes and data field names as well as about the uses and sources of various data fields that will be produced. Chase refuses to produce such a witness. Instead, Chase has offered to answer Plaintiffs' questions in their effort to understand the data. Chase also agreed to look into whether a description of field names and field codes can be produced with the data sample and agreed to get back to us on that question this week. As Plaintiffs have not yet seen the data, or a list of fields to be produced, they cannot assess whether this proposal will be sufficient. However, we agree to wait to review the data produced and to attempt to resolve questions by written communication through counsel, provided that such communication is handled in a timely manner, and at least five days before the deadline for supplementation of expert reports as agreed. Plaintiffs reserve the right to seek a witness on these topics if they deem the questions too complex to resolve informally or if Chase does not reasonably cooperate to resolve them.

2. *Production of Audits:* We understood you to say on October 19, 2012 that Chase's production of audits is complete. This was news to us. However, we have reviewed the production of audits and request a further meet and confer on

the principles under which audits have been redacted. Those principles do not appear consistent across audits. Nor do they appear to comply with applicable law. We would like to have the proposed meet and confer no later than October 24, 2012.

3. *Production of Reports and Spreadsheets:*

   a. *Timing of Production*: Chase will produce unspecified reports and spreadsheets by November 2, 2012.

   b. *Witness*: Chase has declined to produce a witness who can testify about the completeness of the production or about the substance or use of the spreadsheets that are to be produced.

   c. *Basis for Choice of Reports to be produced*: Chase has declined to produce a list or summary of Chase's existing forms of periodic reports specific to modification processes that would be sufficient to allow the parties to meet and confer about issues of relevance or completeness of production.

   *Format*: Chase has declined to produce reports and spreadsheets in native format, but will agree to produce one or two spreadsheets natively on a one-off basis on Plaintiffs' request after review. Chase declines to further discuss these issues and is unwilling to address Plaintiffs concern that non-native production of reports and spreadsheets prevent Plaintiffs and their experts from sorting and manipulating the data to test proposed methodologies to ascertain the class and to review for commonality, typicality and manageability. We continue to maintain that all reports and spreadsheets must be produced in non-static usable format whenever possible.

It is impossible for Plaintiffs to fully evaluate the appropriate plan for moving forward on spreadsheets and reports until the reports and spreadsheets that Chase intends to produce are actually available for review. In light of this uncertainty and the impasses described above, Plaintiffs reserve all rights with respect to the production of spreadsheets and with respect to production of a witness who can testify concerning that production.

4. *Complaints:*

During the October 19 telephonic meet and confer, it became clear that there had been a misunderstanding regarding Chase's proposal for providing complaint files. Plaintiffs had requested that Chase provide 1 in every 5 complaint files, and understood Chase to be offering 500 complaint files. As became clear from our conversation, Chase's proposal was to run 500 loan numbers through a database and provide any complaints that those 500 borrowers had filed. Chase's proposal is unlikely to yield many complaints, and may, in fact, yield no complaints at all. Plaintiffs seek to review

complete complaint files. In the spirit of compromise, Plaintiffs modified our request to 1800 randomly selected complaint files (with at least 1500 complete complaint files). This would represent approximately 1 in 10 complaints and is a substantial compromise from our prior proposal of 1 in 5. We also agreed to limit our request to apply to the Complaint-related correspondence between Chase and the borrower. You told us that you would need to gather more information from your client before responding, and that you would have a response to this proposal before the end of this week. You indicated that the database containing the back and forth between Chase regarding the complaint, does not contain audio files or Chase's "back end" evaluation of the complaint. Plaintiffs understand this and are willing to go forward with our request for the contents of the complaint file if they contain the correspondence back and forth between borrowers and Chase regarding the complaint.

Plaintiffs also raised the difficulties involved in deposing Mr. Short without first seeing the documents about which he was subpoenaed to testify – the complaint files. You stated that the entire complaint production would not be available before his deposition and offered to provide a sample of three (3) complaint files prior to the deposition. Again, in the spirit of compromise and a desire to move the process forward, Plaintiffs are willing to depose Mr. Short prior to complete production of complaint files if Chase produces 15 randomly selected complaint files at least 5 days prior to the deposition. Plaintiffs request that these 15 complaint files be produced complete, i.e., they must include the original complaint, as well as production of correspondence and Chase's "back end" internal evaluation of these 15 complaints, which we understand are housed separately. Of course, we will also need evidence sufficient to establish that file selection is random.

5. *Email:* Mr. Winterhalter and Ms. Amezcua have engaged in a meet and confer process to address Chase's concerns and to, where appropriate, revise and amend the proposed email search terms to reduce Chase's asserted burden in running them. Although that meet and confer process is ongoing and may result in further refinements in the near term, the parties appear to agree (based on Ms. Amezcua's last letter to Mr. Winterhalter) that the meet and confer has progressed far enough that Chase should now run the revised proposed terms against the collected email of priority custodians as soon as possible, so that the parties can evaluate data about the number of hits before engaging in further refinement if necessary. Absent some data showing excessive hits, it is Plaintiffs' position that there is no real support for Chase's assertion of burden.

It is our understanding that Chase does not expect to produce any email or attachments to email by the current discovery deadline.[1] Plaintiffs believe that Chase is inappropriately delaying the process. As discussed, Plaintiffs believe that there are likely to be substantial email and attachments to email that are relevant to class certification including, without limitation, informal discussion of program changes and problems,

---

[1] As Keith Thompson is now scheduled as a witness and is also an email custodian, we expect production of his email prior to his deposition date.

reports, counting statistics on program delays, information that confirms Plaintiffs' experiences in Chase's modification programs, reports of aggregate fees associated with delayed modifications and the like.

### 6. *Additional Witnesses*

The parties agreed that they have reach an impasse on the following topics as refined by prior meet and confer discussions: costs and benefits of various forms of modification to Chase as servicer; Plaintiffs' transactions (as limited to questions about documents and information produced from the electronic files for each Plaintiff); and relationships with vendors not covered by any witness heretofore produced.

Plaintiffs have also pointed out that documents relevant to many witnesses produced were not produced sufficiently in advance of depositions to allow for their review and use at deposition. For example, many forms of written communications to borrowers were not produced until just 36 hours prior to Mr. Pepperney's deposition on those topics. This did not allow Plaintiffs enough time to load those documents into their document review system, let alone to review or use them at deposition.

Plaintiffs reserve all rights with respect to these issues including, without limitation, the right to seek relief from the Court.

Chase has agreed to produce the following additional witnesses:

- Sanchez (Dallas) October 24.
- Short (Columbus) November 6 (subject to reaching agreement on the production of sample complaint files as described above)
- Thompson (Columbus) November 9 (you agreed to evaluate whether Short and Thompson can be conducted on consecutive days in order to facilitate scheduling).
- Brown-Wilson (San Diego) November 7

We plan to take each deposition, subject to the scheduling issues described here and evaluation of the availability of counsel.

Please get back to us on each issue for which you agreed to provide further information by the end of the week. Please also provide your availability for a meet and confer on the audit issue no later than October 25, 2012.

Very truly yours,

Gary Klein

cc: *By Electronic Mail*
   Alexandria Amezcua
   Angela Kleine
   Kevin Costello
   Michael Flannery
   Gretchen Freeman Cappio
   Gretchen Obrist
   Charlie Shaffer
   Eric Holland
   Jon Cuneo