# Exhibit 19

MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

October 25, 2012

Writer's Direct Contact
415.268.6557

Via Email

Gary Klein
Klein, Kavanagh, Costello, LLP
85 Merrimac Street, Fourth Floor
Boston, MA  02114

Re:   *In re JPMorgan Chase Loan Modification Litigation*, MDL No. 2290

Dear Gary:

We write in response to your letter dated October 23, 2012.  Therein you discuss several topics you say were covered in the parties' meet and confer by telephone on October 17, 19, and 22.  We address each of those topics in turn.

## I.       UPCOMING DISCOVERY DEADLINES

On our meet and confer of October 1, 2012, plaintiffs requested an extension of the supplemental expert report deadline.  We agreed to consider any specific proposal by plaintiffs.  In your letter of October 3, you stated that plaintiffs are unable to propose a specific extension.  (Klein Ltr, October 3, 2012, at 7.)  In Wendy Garber's letter of October 15, in the spirit of compromise, we said that we would agree to an extension of the expert supplementation deadline to November 12, 2012, and an extension of the deadline for Chase's rebuttal expert reports to January 7, 2013.  You state in your recent letter that plaintiffs accept these dates.  The parties are thus agreed on these deadlines, and Chase would agree to sign on to a joint request for their extension to the Court.

For the first time, you also request an extension of the fact discovery deadline from November 2 to November 19, 2012.  You explain that such an extension would permit Chase to complete a "substantial quantity" of its document production, and "allow both parties to conduct the depositions" described further on in your letter.  (Ltr at 1.)  You list the following additional witnesses: Sanchez, Short, Thompson, and Brown-Wilson.  (Ltr at 5.)  There also remain depositions to be taken of the two recently-added plaintiffs (Keller and Ellis).  Accordingly, Chase agrees to extend the fact discovery deadline to November 19, only for the purpose of completing discovery already propounded (i.e., the production of documents already agreed upon or ordered,

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Two

and the production of the four additional witnesses identified on page 5 of your letter, and the two new plaintiffs). Chase will not agree to any additional discovery beyond November 2.

## II.   DISCOVERY

### 1.   Production of Data Sample and Named Plaintiff Data

#### a.   Timing of Production

As stated in our letter of October 15, and reiterated on October 19, we expect that the named plaintiff and sample data required by the Court's order of September 21, 2012, will be produced on or before November 2.

#### b.   Redaction

Your letter confuses the parties' discussion regarding redactions for the named plaintiff and data sample with our discussion regarding redactions of reports kept in the ordinary course of business. Ms. Garbers explained in her letter of October 9 that, consistent with the September 21 Order, Chase will redact personally identifying information from the named plaintiff and data sample that it produces to plaintiffs, and will substitute it with a unique identifier. Named plaintiff information will not be redacted. The redaction of reports kept in the ordinary course of business is addressed below. (*See* II.3.d.)

#### c.   Information About Field Names and Field Codes

Without yet receiving or examining the data, plaintiffs request an additional deposition on the topic of the codes and fields used in the named plaintiff and data sample. That would be the *seventeenth* deposition of a Chase witness in this case, including the four currently scheduled to proceed, and not including those in *Durmic*. As explained on our call, Chase declines to agree to a witness on this topic at this time, when it is not clear that there will be any need for such a witness. As Ms. Garbers stated, it may be that the fields are self-explanatory. If not, Chase is open to providing a data-dictionary type explanation of the fields. On our call, we agreed to look into whether a list of the fields could be provided in advance of the data. We are still looking into whether that is possible (or whether doing so will slow down production of the data, among other things), and agree to provide you a status of that investigation by the end of this week.

### 2.   Production of Audits

Ms. Garber's letter of October 8 explained that our production on that date would include "final, non-privileged audit reports regarding the speed or accuracy of Chase's process for evaluating borrowers for modification and its communications to borrowers regarding that process." (Garbers Ltr, Oct. 8, 2012, at 4.) That production occurred, and on our October 19 meet and confer, we

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Three

explained that the production and/or logging of responsive audit reports meeting this criteria is now complete. You request a meet and confer regarding the production and redaction of audits both no later than October 24 (Ltr at 3) and October 25 (Ltr at 5), either a day or two after receipt of your letter. We are willing to meet and confer with plaintiffs on this topic. We are available on Friday, October 26, at 10 a.m. Pacific, or on Monday, October 29, before 4 p.m. Pacific. To the extent plaintiffs have questions about specific documents, the meet and confer would be more productive if plaintiffs circulated bates numbers of those documents before the call. Please let us know which of these times work for plaintiffs, as well as the Bates numbers of any specific documents plaintiffs intend to discuss.

### 3.     Production of Reports and Spreadsheets

#### a.     Timing of Production

As explained on our October 19 call, Chase will produce responsive reports from the list of reports mentioned at the deposition of Karen Shine on or before November 2.

#### b.     Witness

Plaintiffs request a witness on the "completeness of the production or about the substance or use of the spreadsheets that are to be produced." Chase declines to agree to produce such a witness at this time. (Ltr at 3.) First, as has been our consistent position throughout discovery in this matter, Chase cannot agree to produce a witness on the "completeness of the production." Such a request is simply discovery on discovery, and Chase cannot be required to produce a new witness each time plaintiffs have additional documents produced to them. Doing so would perpetuate unending discovery and a cycle of production, a new witness on that production, requests for more documents stemming from that deposition, production of those newly-requested documents, an additional witness on that production, and on and on. Second, it is not accurate to say that plaintiffs have never had the opportunity to question a witness on the reports that Karen Shine maintains. Ms. Shine's deposition was taken on August 23, 2012, at which time plaintiffs had ample opportunity to question her about the "substance or use" of the reports that she maintains, and indeed did. (*See* Shine. Dep. at 71:10-77:7, 78:20-81:11, 83:7-22, 84:22-87:18, 96:23-97:25, 132:24-133:5, 135:18-23, 137:9-23, 139:4-140:3, 184:24-185:17.) Third, similar to plaintiffs' request for a witness on the topic of codes and fields in the named plaintiff and data sample, it is not even clear that plaintiffs require a witness on the substance or use of the reports. Again, it may be that the reports are self-explanatory, or that, if there are really necessary questions, they could be answered informally. As explained on our October 19 meet and confer, Chase has not foreclosed the possibility of a witness on the topic of the substance of the spreadsheets in its entirety, but declines to agree to a witness at this time, before it is clear that there is any need to for such a witness.

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Four

### c.     Basis for Choice of Reports To Be Produced

You state that "Chase has declined to produce a list or summary of Chase's existing forms of periodic reports specific to modification processes that would be sufficient to allow the parties to meet and confer about issues of relevance or completeness of production." (Ltr at 3.) Plaintiffs have never mentioned that a "summary" of the reports would be sufficient. If plaintiffs had raised that as a possibility, we could have explored that request on our October 19 meet and confer. Nonetheless, you fail to mention that Chase has agreed to identify for plaintiffs the responsive reports that will be produced from the list of reports maintained by Ms. Shine. Because Chase cannot provide that information until it has reviewed each of those reports for responsiveness, and that process remains ongoing, Chase will identify the responsive reports for plaintiffs on or before November 2.

### d.     Format

You state that Chase has declined to produce reports and spreadsheets in native format. (Ltr at 3.) That is not true. As we explained on our October 19 meet and confer, Excel spreadsheets are produced in native format. The exception to this is when a spreadsheet must be redacted, in which case it is produced as a TIFF image. As you state, Chase has agreed to produce a reasonable number of such spreadsheets in native form, on a one-off basis per plaintiffs' request. In fact, Chase has already provided spreadsheets in native format, per plaintiffs' request, on more than one occasion. You go on to say that Chase "decline[s] to further discuss these issues and is unwilling to address [p]laintiffs [sic] concern that non-native production of reports and spreadsheets prevent [p]laintiffs and their experts from sorting and manipulating the data[.]" (*Id.*) That is not accurate.

We agreed on our October 19 call to investigate the feasibility of, and any burden involved with, producing redacted spreadsheets in native. Plaintiffs requested that we consider substituting an "X" for the redacted values. You also asked us to consider substituting an "X" for all but the last four digits of any redacted loan numbers. We agreed to provide a response to this proposal by the end of this week. We have since spoken with our production vendor and technical consultants on this point. We can agree to produce redacted Excel spreadsheets in native, and will further agree to substitute the redacted values with an "X." Since we have explained it several times, plaintiffs are aware that this approach alters the document from the way it was kept in the ordinary course of business. It also alters the metadata, essentially resulting in an entirely new document. With regard to loan numbers, we cannot agree to leave the last four digits. We have consulted with Excel experts, and attempted to execute this request on several sample spreadsheets. It can be done, but it requires an additional 15 to 20 minutes per spreadsheet. As there are likely to be hundreds of spreadsheets that require the redaction of loan numbers, the burden to leave all but the last four digits of each loan number would be enormous.

Named plaintiff information will not be redacted.

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Five

4.      **Complaints**

Plaintiffs seek the production of complaint files, but we should be clear: the Court has not ordered any production of complaints.  The September 21 Order provides:

> While Chase has provided various aggregate and summary
> information regarding these complaints, plaintiffs seek production of
> the original complaint records. *The court denies this request as*
> *overly broad and burdensome.*  It will, however, entertain a request
> for a reasonable sampling.

(Order at 3 (emphasis added).)  The Court denied plaintiff's request in its motion to compel, which requested all, and, in the alternative, one in four complaint files.  Implicit in that holding was the finding that a request for one in four complaint files was not reasonable.  Plaintiffs' subsequent proposal for the production of one in every five complaint files was equally unreasonable.  In light of that proposal, Chase offered a search of 100—then 500—loan numbers from the random data sample on the complaint database.  It is difficult to understand any misunderstanding regarding Chase's proposal, when it was clearly stated in our letters of September 26, October 8, and October 15, and on our call on October 1.

It was not until a call with Greg Dresser on October 17 that plaintiffs proposed the production of 1800 *loan files* related to complaints, and on our call of October 19 that plaintiffs first raised the production of 1500 complaint files.  Your letter misstates the parties' exchange on this point.  As we understood it, plaintiffs proposed that Chase produce 1500 complete complaint files, with their case IDs.[1]  You state that we indicated "that the [complaint] database contain[s] the back and forth between Chase regarding the complaint."  (Ltr at 4.)  It is not clear whether this statement was intended as written, or whether plaintiffs intended it to state that the database contains back and forth between Chase *and the borrower*.  In any event, as we explained on the call, the complaint database maintains only the initial complaint correspondence, any correspondence between Chase and the borrower regarding the complaint, and the final resolution letter from Chase regarding the complaint.  It does not contain audio files, nor does it contain any "back end" evaluation of the complaint.

You state that plaintiffs understand this, and "are willing to go forward with [their] request for the contents of the complaint file if they contain the correspondence back and forth between borrowers and Chase regarding the complaint."  (Ltr at 4.)  Chase can agree to provide 1500 complaint files, defined as the initial complaint correspondence; correspondence between Chase and the borrower regarding the complaint, if any; and the final complaint resolution letter from Chase to the borrower.  The case ID would be provided for these files.  The 1500 complaints files would be

---

[1] On our October 19 call, plaintiffs first said that they wanted 1800 complaint files, and then said that they would agree to the production of 1500 complete complaint files.

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Six

selected at random from the approximately 47,000 complaint files described in paragraph 4 of Matthew Short's declaration dated September 17, 2012, submitted in support of Chase's opposition to plaintiff's motion to compel. We are currently assessing the time it would take to review, redact, and produce these documents, and agree to let you know the timing as soon as we are aware of it. We would agree to a production as described above, and waive the fact discovery cut-off with regard to these documents. This agreement is contingent on an agreement from plaintiffs that the production of complaints after November 2 is not a reason that any case deadline must be extended.

Plaintiffs have refused to proceed with the 30(b)(6) deposition on complaints until complaint files are produced. As explained in Greg Dresser's letter dated October 19, plaintiffs do not need the production of any complaints to conduct the deposition. You state that the deposition will be about "the complaint files." (Ltr at 4.) That is not true. The Court has been clear that the 30(b)(6) deposition on this topic regards "the manner in which complaints from borrowers were processed." (Sept. 21 Order at 3-4.) There is nothing in the order regarding individual complaint files.

That said, on our meet and confer, we offered to produce 3 randomly selected complaint files in order to proceed with the deposition. Plaintiffs have responded that they would agree to proceed with the deposition if Chase produces 15 randomly selected complaint files at least 5 days prior to the deposition. We informed you by separate letter on October 22, 2012, that the 30(b)(6) deponent (Matthew Short) is available for deposition on November 6. We agree to produce 15 complaint files, as defined above, by November 1. They will be randomly selected from the 47,000 complaint files also described above.

We cannot agree to produce Chase's "'back end' internal evaluation" of these files. (Ltr at 4.) For one, the Court has only ever contemplated the production of complaints as they are kept in the ordinary course of business. (See June 1, 2012 Order at 2.) In the ordinary course of business, Chase does not maintain any internal evaluation of complaints on its complaint database. Second, the Court has been clear that email production only need occur from ten custodians, and plaintiffs have already identified those custodians. To the extent any "internal evaluation" of these files exists, it would be found only in the email records of the individual Chase employees tasked with researching the complaint, and there could be numerous employees tasked with doing so. Plaintiffs' request for back end internal evaluation of these files goes beyond the parameters required by the Court.

Please let us know whether plaintiffs agree to the production of the 1500 complaint files and, by November 1, the production of 15 complaint files, as defined above. As any delay in a response from plaintiffs on these proposals may impede our ability to meet the deadlines described herein, we would appreciate hearing from you as soon as possible on this.

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Seven

### 5.      Email

There is nothing in my letter of October 19 that commits to running the terms as they are upon the priority custodians' email. In that letter, I confirm the parties' agreement on certain terms, but also point out that there remain further revisions to discuss on several terms. This comports with your representation that the parties' ongoing meet and confer on this point "may result in further refinements" to the search terms. (Ltr at 4.) It also follows Mr. Winterhalter's response on October 23 (to which I will respond by separate letter), in which he requests additional information and proposals regarding certain terms. At this time, the meet and confer process is not stalling any run of the search terms, since the collection of the priority custodians' email has not yet been completed. As agreed, once the parties have completed that meet and confer, and the priority custodians' email is collected, the search terms will be run across their email, and the analysis of those terms used to consider whether any further narrowing is required.

As we explained on our October 19 call, emails for the ten custodians at issue will not be available for review before November 30. This should not be a great surprise to plaintiffs, since the enormous burden and time required to collect emails from custodians across heritage organizations, over a four-year time period, and including archived materials, was explained in Chase's opposition to plaintiffs' motion to compel. (MTC Opp. at 33-34 (discussing the burden associated with collecting from 6 and 20 custodians).) You make an unsupportable assertion that "Chase is inappropriately delaying the process." (Ltr at 4.) To the contrary, we are working diligently to provide these documents as soon as possible, but our representations—in our Opposition and declarations alike—regarding the burden of collecting these documents remain accurate.

As discussed on our call, the timing of the production of emails does not prejudice plaintiffs' ability to file their class certification motion. You state that plaintiffs "believe that there are likely to be substantial email and attachments to email that are relevant to class certification including, without limitation, informal discussion of program changes and problems, counting statistics on program delays, information that confirms [p]laintiffs' experiences in Chase's modification programs, reports of aggregate fees associates with delayed modifications and the like." (Ltr at 4-5.) Regardless: (1) as we said on the call, we will endeavor to produce responsive, non-privileged emails on or before January 15, 2013, one month before—and well in advance of—plaintiffs' class certification deadline; and (2) the thousands upon thousands of documents Chase has produced to date contain the very information you raise as relevant[2].

In a footnote, you assert that Keith Thompson's email should be produced prior to his deposition, which is currently scheduled for November 9. (Ltr 4 n.1.) We can agree to request that Keith Thompson's email collection be placed at the front of the queue, even before the priority custodians, but we do not expect that his email will be available much sooner than November 30,

---

[2] The exceptions to this are "reports of aggregate fees associated with delayed modifications," as it is not clear what plaintiffs mean by these types of reports, or that Chase has ever prepared such reports in the ordinary course.

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Eight

and certainly not by November 9.  Please let us know whether plaintiffs intend to proceed with
Mr. Thompson's deposition, without the production of his emails before then.

### 6.    Additional Witnesses

As discussed on the call that you and your colleagues had with Greg Dresser on October 22, we
agree that the parties are at an impasse regarding witnesses for topics 20 and 24 in plaintiffs'
30(b)(6) deposition notice.  We have already produced three witnesses on vendors (topic 11).
During the October 22 call, plaintiffs' counsel agreed to provide a written description of how they
believed those witnesses were insufficient to cover that topic.  As Greg said during that call,
defendants have already fulfilled their obligation to provide deposition testimony on that topic.

You argue that documents relevant to Mr. Pepperney's deposition were not produced "sufficiently
in advance" of the deposition.  (Ltr at 5.)  You point specifically to forms of written
communications to borrowers.  (*Id.*)  Those documents were produced to plaintiffs the morning of
October 17; the deposition took place on October 19.  We would be remiss not to point out the
number of times that plaintiffs have produced documents *at or after the deposition* of named
plaintiffs.  Furthermore, plaintiffs were not at all prejudiced by the timing of the production of the
form letters that you raise.  Mr. Pepperney was designated to provide an overview of written
communications (and forms of communications) with borrowers regarding applications for HAMP
and other modification programs, topics upon which plaintiffs questioned the witness for
approximately 5 hours.  Indeed, 26 exhibits were used at that deposition, 6 of which were in fact
"forms of written communications to borrowers."  (*See* Pepperney Dep. Exs. 11-16.)

MORRISON | FOERSTER

Gary Klein
October 25, 2012
Page Nine

We have agreed to produce the following witnesses, and no others, and waive the fact discovery cut-off for these depositions alone:

- John Sanchez (Dallas). This deposition took place yesterday (October 24).
- Matthew Short (Columbus). Mr. Short remains available for deposition on November 6. Please let us know if plaintiffs intend to proceed with the deposition on that date, in light of our agreement to produce 15 randomly selected complaint files as described above.
- Keith Thompson (Columbus). We agreed to inquire with Mr. Thompson about his availability for deposition on a day consecutive to Mr. Short's deposition on November 6. Mr. Thompson is not available on November 7 or 8. He remains available for deposition on November 9. Please let us know if plaintiffs intend to proceed with his deposition on that date.
- Vickie Brown-Wilson (San Diego). We have agreed that Ms. Brown-Wilson's deposition can go forward on November 7.

The parties have also discussed the deposition of the recently-added plaintiffs, for which we can also agree to waive the fact discovery cut-off. Greg Dresser will get back to you about dates for those depositions.

Sincerely,

*Alexandria Amezcua /eca*

Alexandria A. Amezcua